[Cite as *Smith v. Kelly*, 2012-Ohio-2547.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

| | | |
|---|---|---|
| JOCELYN SMITH | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.    2011 CA 77 |
| v. | : | T.C. NO.    09CV520 |
| GENE KELLY, SHERIFF, et al. | : | (Civil appeal from Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___8th___ day of ____June____, 2012.

· · · · · · · · · ·

WILLIAM T. CRAMER, Atty. Reg. No. 0068611, 470 Olde Worthington Road, Suite 200, Westerville, Ohio 43082
     Attorney for Plaintiff-Appellant

JEFFREY A. STANKUNAS, Atty. Reg. No. 0072438 and JULIA R. BAXTER, Atty. Reg. No.  0086648, 250 East Broad Street, Suite 900, Columbus, Ohio 43215
     Attorneys for Defendants-Appellees

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}  Plaintiff-appellant Jocelyn Michelle Smith appeals from a decision of the

Clark County Court of Common Pleas sustaining the motion for summary judgment of defendant-appellees Clark County Sheriff's Office and Sheriff Gene Kelly. The trial court's decision was issued on September 16, 2011. Smith filed a timely notice of appeal with this Court on October 14, 2011.

{¶ 2} Smith is an African-American female who was employed as a deputy for the Clark County Sheriff's office. In June of 2007, Smith met Sheriff Kelly at a graduation ceremony for peace officers. Sheriff Kelly encouraged her to apply for a position at the Clark County Sheriff's office. Smith was ultimately hired by the office and began her employment at the Clark County jail on January 14, 2008. Smith's employment included a one year probationary period and was subject to a collective bargaining agreement. The agreement states that discipline or discharge, "shall remain at the sole and absolute discretion of the employer until the employee's probationary period is successfully discharged." The collective bargaining agreement also established periodic performance evaluations throughout the employment probation. Smith's three initial performance evaluations under her employment probation were conducted by jail commander Lieutenant Roach. Each of the three initial evaluations were favorable.

{¶ 3} In May of 2008, two white male deputies reported that Smith showed them cell phone pictures of herself topless. Another white male deputy reported that she sent him a picture of herself topless. Based on this incident, Sheriff Kelly terminated Smith's employment at the Clark County Sheriff's Office. However, at the behest of the NAACP, Smith met with Sheriff Kelly and NAACP representative James Bray. On June 16, 2008, Smith and Sheriff Kelly executed a Memorandum of Understanding which modified Smith's

termination, changing it instead to a suspension. The Memorandum of Understanding (MOU) also reinstated Smith as a probationary employee. During the MOU meeting, Sheriff Kelly asked Smith if she understood that the pictures were inappropriate. Smith replied "yes."

{¶ 4} Thereafter, Lieutenant Whitt replaced Lieutenant Roach as the jail commander. Four days after Smith's reinstatement, Lieutenant Whitt met with her. During the recorded meeting, Lieutenant Whitt told Smith, "If there is a problem or you have another job lined up, I am not going to beat around the bush. Just turn in your resignation and save everybody the time and headache, but like I said, we're going to keep you."

{¶ 5} In August of 2008, an African-American deputy, Moses Young, expressed his concern to Lieutenant Whitt that Smith was dressing inappropriately, and was making inappropriate comments to the inmates. The Sheriff's office also received a complaint from a citizen, Riggins. Riggins claimed that Smith appeared at her residence on Clay Street. The complaint further alleged that Smith flashed her badge, was looking for someone named "Steve," and that Smith had been to Riggins' residence on a prior occasion asking about "Steve." Smith denied this and admitted only to stopping her car on the street, then leaving the area after some people yelled at her about knowing she was a peace officer. In Smith's deposition, she admits to associating with a former inmate of the Clark County Jail named Stephen Rinehart, as well as his "clique." Smith also claimed that one of these people, Mossbargar, was blackmailing her, threatening to ruin her job with the Clark County Sheriff's Office. Following Smith's ultimate termination from the Clark County Sheriff's office on December 18, 2008, Lieutenant Whitt interviewed Stephen Rinehart. On May 20,

2009 Stephen Rinehart revealed to Lieutenant Whitt that he had a relationship with Smith from June 2008 through March 2009.

{¶ 6}   In August of 2008, Smith pointed her pepper spray canister at an inmate. Smith admitted to the conduct, stating that "she was not serious" and that she was responding to the inmate challenging "her toughness."   Sergeant Richendoller questioned her about the incident.  This incident resulted in another MOU, negotiated in September 2008 by the Southern Christian Leadership Conference, between the Clark County Sheriff's Office and Smith.   Under the MOU, Smith agreed to a written reprimand and an extension of her employment probationary period.

{¶ 7}   Another employment performance evaluation was performed in November, 2008 by Lieutenant Whitt, indicating that   Smith was making rude comments and remarks, that the other deputies did not want to work with her, and that Smith was disrespectful to her superiors.    Smith's  training  officer,  Adrienne  Trego,  also  issued  an  interoffice communication on November 24, 2008.   The communication expressed Trego's concern with Smith's "blatant disrespect," as well as Smith's talking to the inmates about other deputies.   Smith was reassigned to the third shift following the interoffice communication.

{¶  8} On December 9, 2008, Smith requested six to eight weeks of leave for surgery, or a light duty assignment.   Lieutenant Whitt again recorded his conversation with Smith. In this conversation, Smith denied that the surgery was elective, and claimed that it was to prevent her duty belt from chaffing.   Dr. Rigano was the cosmetic surgeon Smith consulted for the procedure.   Dr. Rigano testified that the procedure was elective, and that the writing

on the note regarding the surgery stating, "because of duty belt rubbing on skin," was, in fact, a restriction, and not a reason for the surgery.

**{¶ 9}** On December 19, 2008, Sheriff Kelly terminated Smith's probationary employment with the Clark County Sheriff's Office. In April, 2009, Smith filed several claims against the Clark County Sheriff's Office and Sheriff Kelly individually, including: racial discrimination in employment, wrongful termination, and negligent misrepresentation. On May 27, 2011, the Clark County Sheriff's Office and Sherif Kelly filed a motion for summary judgment on Smith's claims, as well as their capacity to be sued. On June 17, 2011, Smith filed her response to the motion, and the defendants filed their reply on June 24, 2011. On September 16, 2011, the trial court granted the motion for summary judgment in favor of the Clark County Sheriff's Office and Sheriff Kelly.

**{¶ 10}** It is from this judgment that Smith now appeals.

**{¶ 11}** Smith's first assignment of error is as follows:

**{¶ 12}** "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT ON APPELLANT'S CLAIMS OF EMPLOYMENT DISCRIMINATION BASED ON RACE AND GENDER."

**{¶ 13}** In her first assignment, Smith contends that the trial court erred when it sustained appellees' motion for summary judgment. Specifically, Smith argues that she established the existence of a genuine issue regarding whether she was the victim of intentional discrimination during her term of employment at the Sheriff's Office. Accordingly, she asserts that summary judgment was improper, and she should have been allowed to proceed with her case. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 14}  An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist. 1983).

{¶ 15}  Pursuant to Civil Rule 56(C), summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).  To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is  no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. *Id*.

{¶ 16}  "R.C. Chapter 4112 makes it unlawful for an employer to discriminate against any person because of her gender with respect to hire, tenure, terms, conditions or privileges of employment.  Ohio courts rely upon federal case law construing Title VII to resolve gender discrimination claims brought under this Chapter." *Hapner v. Tuesday Morning, Inc.*, 2d Dist. Montgomery No. 19395, 2003-Ohio-781; see *Plumbers & Steamfitters Joint*

*Apprenticeship Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981).

{¶ 17} In *Hapner*, we found that the following test applies when determining whether an individual is the victim of gender discrimination:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but were *a pretext for discrimination*. The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. The *McDonell Douglas* division of intermediate evidentiary burdens serves to bring the litigation and the court expeditiously and fairly to this ultimate question. *Texas Dept. of Comm. Affairs v. Burdine* (1981), 450 U.S.

248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207

(internal citations omitted; emphasis added).

**{¶ 18}   A. Prima Facie Case of Race/Gender Discrimination**

**{¶ 19}**   Initially, we note that the appellees assert that Smith failed to establish a prima facie case of race or gender discrimination.  In order to prove a prima facie case of race or gender discrimination, the plaintiff must establish the following: (1) that she is a member of the protected class; (2) that she was subject to an adverse employment action; (3) that she was qualified for the position; and (4) that someone outside the class either replaced her or was treated more favorably. *Shepard v. Griffin Services, Inc.*, 2d Dist. Montgomery No. 19032, 2002-Ohio-2283, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).  Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).  However, the burden of persuasion remains at all times with the plaintiff. *Id.* at 256, 101 S.Ct. at 1095.  The defendant need not persuade the court that its proffered reason was the only motivating factor in its decision, it must only raise a genuine issue of material fact that the decision was not motivated by gender. *Id.* at 254, 101 S.Ct. at 1094.  Once the employer states a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason articulated by the defendant was mere pretext. *Id.* at 256, 101 S.Ct. at 1095.

{¶ 20} Appellees do not dispute that Smith has made the required showing regarding the first three prongs of the prima facie test. Rather, appellees challenge Smith under the fourth prong, arguing that she was unable to establish that a similarly situated, non-protected employee was treated more favorably during a disciplinary action. Smith, however, claims that she presented a genuine regarding whether she was treated differently than a similarly situated, white male employee, Deputy Bryan Beller, who was caught downloading and viewing pornography on a computer at the Sheriff's office. Deputy Beller's employment was not terminated for this conduct, but he was suspended for five days. We also note that at all pertinent times, Deputy Beller was a probationary employee. In its decision granting appellees' motion for summary judgment, the trial court mistakenly found that Deputy Beller was *not* a probationary employee. While this is an important distinction that needs to be acknowledged, it does not affect our ultimate decision regarding whether Smith can establish a prima facie case of discrimination.

{¶ 21} The Sixth Circuit has held that "to be deemed 'similarly situated' in the disciplinary context, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). Smith asserts that she and Deputy Beller were "similarly situated" because they were both probationary employees at the Sheriff's office who were disciplined for similar conduct.

{¶ 22} In his affidavit, Sheriff Kelly testified that Deputy Beller admitted that he viewed pornography on a computer at the Clark County Jail during his probationary period. For his inappropriate conduct, Deputy Beller was given a five day suspension. Sheriff Kelly testified that Smith was initially disciplined for showing a topless picture of herself to three co-workers while at work. For her inappropriate conduct, Smith was ultimately given a ten-day suspension, and her probationary period was extended. Smith admitted during her deposition that she was not suing over the ten-day suspension or the extension of her probationary period.

{¶ 23} Unlike Smith, however, Deputy Beller did not engage in any further inappropriate conduct during his probationary period. In addition to sending a topless picture of herself to co-workers, further instances of Smith's inappropriate conduct include: (1) unprofessional confrontations with Springfield Police clerk, Robin Carter; (2) unprofessional conversations with inmates regarding co-workers; (3) citizen complaints regarding Smith's lack of professionalism; (4) pointing pepper spray at an inmate's face while she was "playing around;" (5) inappropriate conduct with inmates and former inmates; (6) deficiencies noted in a performance evaluation conducted on September 24, 2008; (7) memorandum drafted by Deputy A. Trego on September 24, 2008 containing a negative assessment of Smith; (8) suspicion that Smith faked being sick in order to avoid temporary transfer to third shift; and (9) requesting sick leave and/or a light duty assignment in order to obtain elective plastic surgery. As a result of the extensive pattern of inappropriate conduct engaged in by Smith, she was ultimately terminated from her position as a Clark County Deputy. More importantly, when compared with Smith's numerous instances of bad

conduct, Deputy Beller's single instance of punishable behavior is clearly distinguishable such that Smith is not similarly situated to him.   Accordingly, Smith is unable to establish a prima facie case for race or gender discrimination.

{¶ 24}   **B. Legitimate Non-Discriminatory Reasons for Termination as a Pretext**

{¶ 25}   Even if we were to find that Smith was able to prove a prima facie case for race or gender discrimination, the record establishes that no genuine issue of material fact exists regarding whether the legitimate non-discriminatory reasons for her termination were merely a pretext for impermissible discrimination based on her race or gender.   As stated previously, had Smith been able to   establish a prima facie case of employment discrimination, the burden would shift to appellees "to articulate some legitimate, nondiscriminatory reason" for Smith's termination. *Hapner*, 2d Dist. Montgomery No. 19395, 2003-Ohio-781.   "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

{¶ 26}   If appellees articulate a legitimate, race-neutral basis for the adverse employment action, then the burden shifts back to Smith to "come forward with evidence that [appellees'] proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000).   In her appellate brief, Smith acknowledges that the non-discriminatory reasons proffered by appellees as a basis for her termination "when taken at face value, appear sufficient to overcome the presumption of intentional discrimination arising from the prima facie case." Thus, Smith must establish by a preponderance of the evidence that appellees' proffered

reasons for her dismissal were pretextual, and therefore, unworthy of credence. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

{¶ 27}  In an effort to establish that appellees' stated reasons for her termination were a mere pretext for actual discrimination, Smith asserts the following: (1) although Carter initially "[gave] her a hard time," the two women discussed their issues in the presence of a superior, after which "they got along fine;" (2) she did not talk to the inmates, but rather simply listened to them; (3) she was fully clothed in the picture she showed to her co-workers; (4) she did have contact with Rinehart once he was released from jail, but she was never in an improper relationship with him; (5) she admitted to driving down Clay Street where Riggins lived, but denied stopping at the residence ostensibly to determine Rinehart's location; (6) she admitted pointing her can of pepper spray in an inmate's face but stated that she was "only playing around;" (7) she stated she was really sick and needed time off due to work related stress and was not merely trying to avoid her temporary assignment to a different shift.

{¶ 28}  In *Hapner*, we discussed the nature of arguments advanced by plaintiffs that were insufficient to establish a pretextual motive:

> Often, when an employer discharges an employee for a legitimate, non-discriminatory reason based upon the employee's conduct, the conduct upon which the discharge is predicated is subject to a factual dispute.  The employee claims that he didn't do the act, or that he had a legitimate reason for doing the act, and the employer chooses to

disbelieve the employee. In cases where the conduct upon which a discharge is predicated is subject to factual dispute, merely persuading the finder of fact that the facts are as claimed by the employee, without more, is not sufficient to establish a claim of unlawful discrimination, assuming that the discharged employee is within a legally protected class. Otherwise, every time a member of a protected class were discharged, that discharged employee could obtain judicial review of the grounds for his discharge. That is not the intent of laws prohibiting discrimination in employment. An employer may make a reasonable factual conclusion concerning an employee's conduct, and the mere fact that a jury might reach a different factual conclusion, without more, is not sufficient to make out a claim of unlawful employment discrimination. It is only when the employer's conclusion of fact is so unreasonable that it independently supports an inference of discrimination, or when an employer's conclusion of fact with which a jury subsequently disagrees, together with other evidence, supports a finding of discrimination, that a jury may reasonably find that the employer's proffered legitimate grounds for the adverse action is a pretext for unlawful

discrimination. That is consistent with our understanding of *Reeves*, supra.

**{¶ 29}** In the instant case, we find that Smith offered only her own self-serving statements of pretext on the part of appellees, and she failed to create a genuine issue of material fact that her race or gender were the real reason for the adverse employment action. Appellees provided a litany of reasons regarding why Smith was ill-suited to employment as a deputy in Clark County as a basis for her termination. Upon review we conclude that Smith failed to put forward sufficient evidence to support a reasonable inference that appellees' proffered non-discriminatory grounds for her discharge were a pretext for race or gender discrimination.

**{¶ 30}** We also note that Smith argues that the demographic breakdown of the Sheriff's office supports an inference that appellees' decision to terminate her employment was a pretext for race and gender discrimination. In support of this argument, she points out that Lt. Whitt testified that there were only seven African-Americans employed by the Sheriff's Office, and all of them were assigned to the jail division. Smith also points out that out of the twenty-four employees in the command structure of the Sheriff's Office, only four were female, and none were African-American.

**{¶ 31}** Statistical evidence of disparities between minority representation in an employer's work force and minority representation in the community from which employees are hired may help prove disparate treatment in a pattern or practice case, but such a pattern or practice is shown through a combination of statistical evidence demonstrating substantial disparities buttressed by evidence of general policies or specific instances of discrimination.

*Hazelwood School Dist. v. United States*, 433 U.S. 299, 307, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). In this instance, statistics alone are insufficient to establish disparate treatment. Other than noting the number of African-Americans employed by the Sheriff's Office, and noting Officer Whitt's testimony that there are a "good number of African-Americans in Springfield," Smith did not provide any additional evidence which implied a nexus between the limited statistical evidence and any adverse employment practices on the part of the Sheriff's Office. Merely quoting statistics, without any additional testimony or explanatory evidence, is insufficient to establish the existence of a pretext in a claim of race or gender discrimination.

{¶ 32} Lastly, Smith argues that Sheriff Kelly noted during her initial interview for the deputy position that she was married to an older man and asked whether she liked older men. Smith also asserts that after she returned to work after her first firing, Sheriff Kelly allegedly told her that "the other deputies were jealous of her because she was attractive." Smith contends that these comments "may indicate that the Sheriff did not take her as seriously as he did the male deputies."

{¶ 33} Smith does not argue that these comments are direct evidence of discrimination, nor does she assert the comments are circumstantial evidence of gender discrimination. Without more, we fail to see how the alleged comments have any bearing on Smith's claims of race or gender discrimination.

{¶ 34} After reviewing the evidence and all reasonable inferences arising therefrom in a light most favorable to Smith, we cannot conclude that the trial court erred in

granting summary judgment for appellees on Smith's claims of race and gender discrimination.

{¶ 35}   Smith's first assignment of error is overruled.

{¶ 36}   Smith's second assignment of error is as follows:

{¶ 37}   "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE CLARK COUNTY SHERIFF'S OFFICE ON GROUNDS THAT IT IS NOT AMENABLE TO SUIT."

{¶ 38}   In her second assignment, Smith argues that the trial court erred as a matter of law in granting summary judgment in favor of Defendant-Appellee, The Clark County Sheriff's Office on the grounds that it was not amenable to suit.   Smith's complaint names the Clark County Sheriff's Office as a defendant.

{¶ 39}   A Sheriff's Office or Sheriff's Department is not a legal entity subject to suit. *Ciganik v. Kaley*, 11th Dist. Portage No. 2004-P-0001, 2004-Ohio-6029, ¶ 40.  A county, however, is a legal entity subject to a suit, and is considered a political subdivision pursuant to R.C. 2744.01(F).  Smith raises *Bricker v. State Farm Ins.*, 11th Dist. Lake No. 2009-L-087, 2010-Ohio-3047, in a belated effort to amend her pleadings to include Clark County.  In *Bricker*, the Ohio Eleventh District Court of Appeals reversed the trial court's finding that plaintiff's failure to name a party subject to suit entitled the defendant Sheriff's Department to judgment as a matter of law. Specifically, *Bricker* held that, "In the trial court, the parties appear to have treated Lake County, not the sheriff's department, as the party sued.  Given the great latitude trial courts have to amend pleadings and substitute parties under the civil rules, we shall consider the county's liability for purposes of this appeal." *Id.*

at ¶ 20.  Smith's reliance on *Bricker* is not persuasive.  In the instant case, all briefs, motions, and the trial court's opinion refer to the defendant-appellee as the "Clark County Sheriff's Office" and never as "Clark County."   Neither is there any indication in the record that the appellant treated Clark County as the party sued.

{¶ 40}    Furthermore, the court in *Bricker* noted that the Lake County Sheriff's Department failed to argue before the trial court that the Sheriff's Department is not a legal entity subject to suit, and in doing so, had waived that argument. *Id.* at ¶ 21.   However, here, appellees clearly raised this argument in their motion for summary judgment, as well as in their answer to Smith's complaint.   We note that at no time did appellant seek to amend her pleadings to name Clark County as a party to the litigation.   Thus, Smith has waived that argument for the purposes of the instant appeal.   Failure to raise an argument in the trial court generally will be considered a waiver of such matter on appeal. *State v. Bissaillon*, 2d Dist. Montgomery No. 06-CA-130, 2007-Ohio-2349, citing *McGovern Builders, Inc. v. Davis*, 12 Ohio App.3d 153, 156, 468 N.E.2d 90 (2d Dist.1983).

{¶ 41}    Smith's second and final assignment of error is overruled.

{¶ 42}    All of Smith's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

William T. Cramer
Jeffrey A. Stankunas
Julia R. Baxter
Hon. Richard J. O'Neill