[Cite as *Rivers v. Cashland*, 2013-Ohio-1225.]

STATE OF OHIO        )                 IN THE COURT OF APPEALS
                        )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

MARISA D. RIVERS                  C.A. No.     26373

      Appellant

      v.                            APPEAL FROM JUDGMENT
                                   ENTERED IN THE
CASHLAND FINANCIAL SERVICES, et    COURT OF COMMON PLEAS
al.                              COUNTY OF SUMMIT, OHIO
                                   CASE No.    CV 2009-11-8492

      Appellees

DECISION AND JOURNAL ENTRY

Dated: March 29, 2013

---

BELFANCE, Judge.

{¶1} Marisa Rivers appeals the trial court's award of summary judgment. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} Ms. Rivers began working for Cashland Financial Services in April 2004. Cashland moved Ms. Rivers into busier stores and eventually made her the manager of the State Road Cashland store, which was Cashland's third-busiest store in Summit County, in 2007. Throughout her time at Cashland, Ms. Rivers received annual merit raises, and, while she was the manager of the State Road store, she also received monthly bonuses for the performance of the store.

{¶3} Ms. Rivers injured herself opening the store in September 2007, and she filed a workers' compensation claim against Cashland. In December 2008, she learned that she would have to undergo further operations for her injury and initiated permanent partial disability

proceedings against Cashland, which were settled in April 2009. In June 2009, Ms. Rivers' supervisor, Mindy Cannon, fired her, citing violations of company policy.

{¶4} Ms. Rivers filed a complaint against Cashland, Cash America (Cashland's parent company), and Ms. Cannon. She alleged that the defendants had violated R.C. 4123.90 by retaliating against her for making a workers' compensation claim and had discharged her in violation of public policy. She also alleged that the defendants had engaged in sex, race, and disability discrimination, had intentionally inflicted emotional distress, and had engaged in negligent training and supervision. Following discovery, the defendants moved for summary judgment, and Ms. Rivers filed a motion in opposition. The trial court granted the defendants' motion and awarded summary judgment on all claims. Ms. Rivers has appealed, raising nine assignments of error for our review. For ease of discussion, we have rearranged her assignments of error.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'S CLAIM FOR DISABILITY DISCRIMINATION.

{¶5} Ms. Rivers argues in her second assignment of error that the trial court erred in granting summary judgment in favor of the defendants on her claim of disability discrimination.

{¶6} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. No. 25427, 2011–Ohio–1519, ¶ 8.

{¶7}    Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. at 293, quoting Civ.R. 56(E).

{¶8}    R.C. 4112.02(A) provides that it is "an unlawful discriminatory practice[] [f]or any employer, because of the * * * disability * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  In order to establish a prima facie case of disability discrimination, the person seeking relief must demonstrate (1) that he or she has a disability, "(2) that an adverse employment action was taken by an employer, at least in part, because the individual was [disabled], and (3) that the person, though [disabled], can safely and substantially perform the essential functions of the job in question."  *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998).

{¶9}    The trial court granted summary judgment to the defendants on Ms. Rivers' claim of disability discrimination because it found "that there is no evidence presented that [Ms.] Rivers was terminated because of [] any alleged or perceived disability.  [Ms. Rivers] testified

that after her injury that all her requests for accommodations were granted." In other words, the trial court determined that Ms. Rivers could not prevail on her disability discrimination claim because she failed to satisfy the second prong from *McGlone*, which requires that adverse employment action be taken at least in part because of the person's disability. *See id*. at 571. In concluding that no adverse action was taken against Ms. Rivers, it appears that the trial court focused on the fact that Ms. Rivers was injured in 2006 but was not terminated until 2009 and that, immediately after her injury in 2006, accommodations were made. However, it was only in December 2008 that Ms. Rivers became aware that she was permanently partially disabled from her injury and began pursuing a permanent partial disability claim. It was also around this time when Cashland ceased giving Ms. Rivers monthly performance bonuses, Ms. Cannon began putting Ms. Rivers on improvement plans, and that Ms. Rivers was terminated from employment. Thus, when viewing the facts in the light most favorable to Ms. Rivers, after December 2008, there is a dispute of fact as to whether, upon pursuing her permanent-partial disability claim, adverse employment action was taken against her at least in part due to her disability, culminating in her termination from employment.[1] Thus, the trial court erred in granting summary judgment to the defendants on the basis described in its judgment.[2]

{¶10} Ms. Rivers' second assignment of error is sustained.

---

[1] We note that, while a disability under worker's compensation law may not necessarily qualify as a disability for the purposes of R.C. Chapter 4112, or vice versa, the fact that Cashland's behavior towards Ms. Rivers changed after learning she was pursuing a permanent partial disability claim, eventually culminating in her termination, could support the conclusion that Ms. Rivers' permanent partial disability claim led Cashland to perceive her as having a physical impairment and to take the adverse employment actions as a result. *See Scalia v. Aldi, Inc.*, 9th Dist. No. 25436, 2011-Ohio-6596, ¶ 24-25.

[2] It is unclear from the trial court's entry whether it reached the question of whether Ms. Rivers had a disability or whether she was capable of safely and competently performing her job with reasonable accommodations. *See McGlone*, 82 Ohio St.3d at 571. This Court will not address these questions in the first instance. *Neura v. Goodwill*, 9th Dist. No. 11CA0052-M, 2012-Ohio-2351, ¶ 19.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'[S] CLAIM FOR WORKERS['] COMPENSATION RETALIATION.

{¶11} In Ms. Rivers' third assignment of error, she argues that the trial court should not have awarded summary judgment to the defendants on her claim of retaliation under R.C. 4123.90.

{¶12} R.C. 4123.90 provides, in pertinent part,

No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

{¶13} Courts analyze retaliatory-discharge claims under a burden-shifting framework, requiring the employee to initially set forth a prima facie case by showing the existence of an on-the-job injury that resulted in a workers' compensation claim and a causal connection between the claim and the employee's termination. *Scalia,* 2011-Ohio-6596, at ¶ 14. "Once the plaintiff establishes each element of the prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the employee. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the reason offered for the termination is a pretext for retaliation." (Internal citation omitted.) *Id.* The trial court found that the defendants did not dispute that Ms. Rivers established a prima facie case of retaliatory discharge. It then proceeded to examine whether the defendants had a non-discriminatory reason for the discharge. The trial court found that Ms. Rivers

not only had multiple written violations of company policies and procedures, but was also put on at least two written "Improvement Plans[."] Furthermore, after being confronted about utilizing company resources * * * on company time about

selling Avon products, [Ms.] Rivers initially lied to [Ms.] Cannon about pursuing Avon during working hours.

However, the trial court's account ignores Ms. Rivers' averment that she did not lie to Ms. Cannon when initially confronted about her sale of Avon products at the store. Furthermore, the two written "Improvement Plans[]" mentioned by the trial court occurred after Ms. Rivers initiated permanent-partial disability proceedings against Cashland in December 2008. Ms. Rivers also averred that Ms. Cannon and another former supervisor had also engaged in similar cross-marketing on company time when they had been managers. While Ms. Rivers admittedly had disciplinary issues that predated the more recent workers' compensation claim, when viewed in the light most favorable to her, a jury could conclude that Cashland increased its documentation of Ms. Rivers' performance issues, as well as firing her for activities similar to those engaged in by her supervisors, to retaliate against her pursuing her permanent-partial disability claim. In other words, there is a material dispute of fact as to whether Cashland's non-retaliatory business reason for terminating Ms. Rivers' employment was merely pretextual.

{¶14} Accordingly, her third assignment of error is sustained.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'S CLAIM FOR RACE DISCRIMINATION.

{¶15} In Ms. Rivers' fifth assignment of error, she argues that the trial court erred in granting the defendants' motion for summary judgment with regards to her race discrimination claim. We agree.

{¶16} R.C. 4112.02(A) provides that it is "an unlawful discriminatory practice[] [f]or any employer, because of the race * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or

privileges of employment, or any matter directly or indirectly related to employment." "[A] plaintiff may make a prima facie showing of discrimination by establishing that he [or she] (1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and that (4) a comparable nonprotected person received better treatment." *Williams v. Spitzer Auto World Amherst, Inc.*, 9th Dist. No. 07CA009098, 2008-Ohio-1467, ¶ 16. Race discrimination claims are analyzed under a burden-shifting framework. "Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Smith v. Kelly*, 2d Dist. No. 2011 CA 77, 2012-Ohio-2547, ¶ 19. "Once the employer states a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason articulated by the defendant was mere pretext." *Id.*

{¶17} There is no dispute that Ms. Rivers, who is African-American, established a prima facie case of race discrimination. However, the defendants responded by putting forth nondiscriminatory reasons for her discharge, namely that she had violated the company policy for conducting personal business on company time with company resources. Thus, the issue is whether there is a genuine issue of material fact that this reason for her discharge was pretextual.

{¶18} Ms. Cannon admitted that she encouraged her managers to engage in cross-marketing of products, which Ms. Rivers averred that she did with her Avon sales (i.e. using Cashland bags to deliver the products and placing Cashland brochures in the bags). Ms. Rivers also averred that two employees who were not African-American, including Ms. Cannon, sold outside products on company time when they were managers similar to how she sold Avon products. However, while the other employees engaged in similar behavior, neither of them were discharged from the company while Ms. Rivers was. Thus, when the evidence is viewed in

a light most favorable to Ms. Rivers, there is a genuine issue of material fact whether the company's reason for discharging her was merely pretextual, and, therefore, the trial court erred when it awarded summary judgment to the defendants on Ms. Rivers' claim of race discrimination.

**{¶19}** Ms. Rivers' fifth assignment of error is sustained.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA['S] CLAIM FOR SEX DISCRIMINATION.

**{¶20}** Ms. Rivers argues in her fourth assignment of error that the trial court erred when it granted summary judgment to the defendants on her claim of sex discrimination. We disagree.

**{¶21}** R.C. 4112.02(A) provides that it is "an unlawful discriminatory practice[] [f]or any employer, because of the * * * sex * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Under the burden-shifting framework described above, Ms. Rivers was required to set forth a prima face case of gender discrimination. *See Koballa v. Twinsburg Youth Softball League*, 9th Dist. No. 23100, 2006-Ohio-4872, ¶ 22. "If the plaintiff successfully establishes a prima facie case, the employer must articulate a legitimate, nondiscriminatory justification for the employment action. The plaintiff may then prove, by a preponderance of the evidence, that the justification articulated by the employer is a pretext for discrimination." (Internal citation omitted.) *Fox v. Lorain Cty. Metro Parks*, 9th Dist. No. 07CA009134, 2007-Ohio-6143, ¶ 10.

**{¶22}** Ms. Rivers argues that, assuming that the Defendants set forth non-discriminatory reasons for her discharge, she "has provided some evidence that this reason is pretextual as

argued above." Ms. Rivers appears to be suggesting that the fact that Ms. Cannon and another female employee also conducted a side business on company time establishes pretext. However, she does not actually develop this argument, and this Court will not develop one for her. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, \*8 (May 6, 1998). Accordingly, based on Ms. Rivers' limited argument, her fourth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

> THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'S CLAIM FOR RETALIATION PER O.R.C. 4112.02([I]).

{¶23} In Ms. Rivers' sixth assignment of error, she argues that the trial court improperly granted summary judgment on her claim for retaliation in violation of R.C. 4112.02(I).

{¶24} We initially note that the parties dispute whether Ms. Rivers ever actually made such a claim in her complaint. The defendants never moved for summary judgment on the claim, and, when Ms. Rivers mentioned the existence of the claim in opposition to summary judgment, the defendants filed a reply in which they argued that Ms. Rivers had never made the claim. Although it is not entirely clear whether the trial court agreed that Ms. Rivers had stated a claim under R.C. 4112.02(I), it granted the defendants' motion on all claims, stating that no further claims remained, and dismissed Ms. Rivers' complaint.

{¶25} R.C. 4112.02(I) provides that it is unlawful "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

"To establish a case of retaliation, a claimant must prove that (1) she [or he] engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action."

*Pintagro v. Sagamore Hills Twp.*, 9th Dist. No. 25697, 2012-Ohio-2284, ¶ 11, quoting *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 13.

**{¶26}** In Ms. Rivers' complaint, she titled count four as "Disability Discrimination-O.R.C. []4112.01, []4112.02, and []4112.99, et seq."  She goes on to state:

In the alternative Plaintiff's termination was not wholly unrelated to, and was in retaliation for, Plaintiff engaging in legally protected activities known to Defendant.

[]In the alternative, Defendants' decision to terminate Plaintiff was not wholly unrelated to, and was in retaliation for, Plaintiff engaging in legally protected activities known to Defendant.

Essentially, Ms. Rivers' pled a R.C. 4112.02(I) retaliatory discharge claim in the same count as her claim of disability discrimination.

**{¶27}** Thus, because the defendants never moved for summary judgment on this claim, the trial court erred in awarding the defendants summary judgment on this claim.  *See Smith v. Ray Esser & Sons Inc.*, 9th Dist. No. 10CA009798, 2011-Ohio-1529, ¶ 14.  Accordingly, Ms. Rivers' sixth assignment of error is sustained.

ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'S CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY.

**{¶28}** In Ms. Rivers' seventh assignment of error, Ms. Rivers argues that the trial court should not have granted the defendants' motion for summary judgment because it was against public policy for them to engage in discrimination in the workplace and to retaliate against her

for filing a worker's compensation action. She also suggests that there was an inherent unfairness in the way she was terminated from her employment.

{¶29} With regard to Ms. Rivers' argument concerning the defendants' alleged discriminatory practices and retaliation for her filing a worker's compensation claim, Ms. Rivers has not articulated a violation of public policy that is distinct from the facts and circumstances surrounding the statutory claims contained in her complaint. *See* R.C. 4112.02(A) and R.C. 4123.90; *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, ¶ 9 (outlining elements of wrongful discharge in violation of public policy). While she is correct that violations of R.C. 4112.02(A) and R.C. 4123.90 would violate a clear public policy, she has statutory remedies available to her. *See* R.C. 4112.02(N); R.C. 4112.05(G); R.C. 4112.99; R.C. 4123.90. *See also Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, ¶ 29-32 (discussing the remedies for employment violations in the context of age discrimination). Thus, in light of her statutory remedies, a common-law claim of wrongful discharge in violation of public policy is not the proper avenue for relief. *Leiniger* at ¶ 33-34.

{¶30} Ms. Rivers also suggests that there was an inherent unfairness in the way she was terminated. Essentially, Ms. Rivers argues that she should not have been fired solely on the allegation from Ms. Cannon, her supervisor, that she had violated Cashland's policy regarding computer use. It appears that Ms. Rivers believes that public policy should require a greater investigation or a grievance proceeding for at-will employees prior to termination. However, Ms. Rivers has not cited any portion of the Revised Code, the Ohio Constitution, or the United States Constitution to support her claim that a public policy exists that requires a different manner or procedure for terminating at-will employees than the manner employed in this case. *See Sutton* at ¶ 9. She points to *Wells v. Ormet Corp.*, 7th Dist. No. 798, 1999 WL 159231, for

the proposition that unfairness in the workplace violates public policy. However, *Wells* dealt with an unique set of facts, namely that an employee was fired for speaking truthfully at a formal hearing between an employer and an union, which is not comparable to this case. *See id.* at *2. Thus, Ms. Rivers has failed to establish that there is a public policy that the defendants potentially violated separate from her claims for discrimination and retaliation.

{¶31} Accordingly, we cannot conclude that the trial court erred when it awarded summary judgment to the defendants on Ms. Rivers' claim of wrongful discharge in violation of public policy because she either had a statutory remedy available or failed to establish that such a public policy existed under the circumstances of her case. Her seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR VIII

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

{¶32} Ms. Rivers argues that the trial court erred in awarding the defendants summary judgment on her claim of intentional infliction of emotional distress. We disagree.

{¶33} "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994). "Termination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee." (Internal

quotations and citations omitted.) *Gradisher v. Barberton Citizens Hosp.*, 9th Dist. No. 25809, 2011-Ohio-6243, ¶ 6.

**{¶34}** Ms. Rivers suggests that the defendants engaged in "the disparagement of the integrity of a long-time valued employee with a good record for honesty * * *" and that that constituted "extreme and outrageous" conduct. Though Ms. Rivers does not articulate what actions by the defendants constituted "the disparagement of [her] integrity[,]" it appears she is referring to Ms. Cannon's assertion that Ms. Rivers initially denied using her work computer to place Avon orders. She suggests this case is similar to *Russ v. TRW, Inc.*, 59 Ohio St.3d 42 (1991). However, the facts of this case, even when viewed in the light most favorable to Ms. Rivers, are readily distinguishable from *Russ*. In *Russ*, the employer "mislead[] [the plaintiff] into believing the pricing practices were legitimate, discharg[ed] [the plaintiff] under circumstances designed to give the impression that he was responsible for the practices, and [] subsequent[ly] target[ed the plaintiff] as a suspect in the federal investigation * * *." *Id.* at 47. That is hardly comparable to Ms. Cannon's statement that Ms. Rivers had lied to her, even assuming the statement was entirely untrue.

**{¶35}** Furthermore, Ms. Rivers presented no evidence that she suffered serious emotional distress as a result of Ms. Cannon's statement; rather, her entire deposition testimony and her affidavit attribute the distress solely to the loss of her job. Accordingly, we cannot conclude that the trial court erred when it granted the defendants' summary judgment motion with regards to Ms. Rivers' claim for intentional infliction of emotional distress.

**{¶36}** Ms. Rivers' eighth assignment of error is overruled.

ASSIGNMENT OF ERROR IX

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT ON MARISA'S CLAIM FOR NEGLIGENT SUPERVISION AND TRAINING.

**{¶37}** In Ms. Rivers' ninth assignment of error, she argues that the trial court should not have granted summary judgment on her claim of negligent supervision and training. We agree.

**{¶38}** To prove a claim of negligent supervision and retention, a plaintiff must show

> (1) [t]he existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

(Internal quotations and citations omitted.) *Armbruster v. Hampton*, 9th Dist. No. 05CA008716, 2006-Ohio-4530, ¶ 24. A plaintiff must also demonstrate that the employee's act was reasonably foreseeable. *Id.* "[A]n underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." (Internal quotations and citations omitted.) *Natl. Union Fire Ins. Co. of Pittsburg, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 23.

**{¶39}** The defendants argued in their motion for summary judgment that Ms. Rivers' claim for negligent supervision and training must be dismissed because she failed to demonstrate that Ms. Cannon was liable for any wrong doing. The trial court agreed. However, as has been discussed in Ms. Rivers' preceding assignments of error, there is a genuine issue whether Ms. Rivers was the victim of retaliatory discharge as well as racial or disability discrimination in part due to Ms. Cannon's conduct. Thus, Cashland and Cash America were not entitled to summary judgment on the basis articulated by the defendants.

**{¶40}** Ms. Rivers' ninth assignment of error is sustained.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING CASHLAND AND CANNON'S MOTION FOR SUMMARY JUDGMENT BY APPLYING THE WRONG LEGAL STANDARD, MAKING CREDIBILITY DETERMINATIONS AND ON GROUNDS NOT STATED IN THE MOTION.

**{¶41}** In Ms. Rivers' first assignment of error, she argues that the trial court misapplied the summary judgment standard in granting summary judgment to the defendants. However, the trial court clearly applied Civ.R. 56, and, to the extent that Ms. Rivers is arguing that the trial court erred by not finding that there were genuine issues of material fact, that argument has been addressed more thoroughly above as it applies to each of her claims.

III.

**{¶42}** In light of the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

        EVE V. BELFANCE
        FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ROBERT E. KERPER, JR., Attorney at Law, for Appellant.

ROBERT S. GILMORE, JONATHAN T. HYMAN, and CANDICE B. MILLER, Attorneys at Law, for Appellees.