[Cite as *Osborne v. Ohio Reformatory for Women*, 2021-Ohio-1036.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Shirley Osborne, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 20AP-45 |
| v. | : | (Ct. of Cl. No. 2018-01314JD) |
| Ohio Reformatory for Women, | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 30, 2021

**On brief:** *Kemp, Schaeffer & Rowe Co., L.P.A.,* and *Erica Ann Probst*, for appellant.

**On brief:** *Dave Yost*, Attorney General, *Timothy M. Miller,* and *Laura D. Emery*, for appellees. **Argued:** *Timothy M. Miller.*

APPEAL from the Court of Claims of Ohio

ZAYAS, J.

{¶ 1} Plaintiff-appellant, Shirley Osborne, appeals the judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Ohio Reformatory for Women ("ORW"), on Osborne's action for reverse race discrimination. For the following reasons, we affirm the trial court.

## I. Facts and Procedural History

{¶ 2} Osborne is a former employee of ORW. She was hired for the position of Corrections Officer in 2005 and served in that position for approximately ten years before transitioning to an administrative professional position. In early 2017, the warden of ORW, Ronette Burkes, promoted Osborne to the position of "Classification Specialist," an administrative position with an accompanying raise in salary that is assigned to a specific

unit of the prison known as "MCC." (Burkes Aff. at 1; Osborne Dep. at 13.) The Classification Specialist position reported to the Unit Manager, Obianuju Anunike, who Osborne briefly reported to in the past when both women held other positions. Both Burkes and Anunike are African American, while Osborne is Caucasian.

{¶ 3} Osborne's promotion was postponed pending the result of an administrative investigation into a March 2017 interaction between Osborne and Anunike. The investigation recommended that no further action be taken. Osborne then requested and attended a mediation with Anunike, which both parties describe as unsuccessful. According to Anunike, on the recommendation of the mediator she provided Osborne with a written list of "probationary expectation[s]," including not "hang[ing] out" outside of the unit and notifying Anunike or another employee if she was leaving the unit. (Appellant's Brief at 10-13, citing Osborne Dep., Ex. D.) Osborne's promotion became official in June 2017, subject to a standard six-month probationary period.

{¶ 4} At the time of Osborne's promotion, nine total employees reported to Anunike, four of them also holding the title Classification Specialist:

- Hannah Sexton (Caucasian) – Case Manager
- Maria Jones (African American) – Case Manager
- Chandra Rinehart (Caucasian) – Sergeant
- William Dunahay (Caucasian) – Sergeant
- Kim Smith (Caucasian) – Classification Specialist
- Rebecca Dowling (Caucasian) – Classification Specialist
- Darcy Hawke (Caucasian) – Classification Specialist
- Cynthia Gonzalez (Caucasian[1]) – Classification Specialist
- Deric Arnett (Caucasian) – Administrative Professional 1

Other employees under Anunike's supervision during the relevant time period included:

- Brian Reames (race unknown) – Temporary Classification Specialist (worked in the unit May through August 2017 while Hawke was on leave)

---

[1] Osborne testified that she did not know Gonzalez's race. However, Osborne submitted Exhibit A, an affidavit of ORW Personnel Director Roger Keller that lists Gonzalez as Caucasian, and Osborne made no assertion to the contrary to the trial court or on appeal.

- Marcus Stewart (Caucasian) – Classification Specialist (hired to replace Dowling)

{¶ 5} On August 5, 2017, Osborne reported to work but then left her assigned unit around 10:00 a.m. to visit with her former colleagues in another unit. She did not sign the log-book to leave. Believing Osborne had left for the day, a co-worker performed the approximately 24 inmate assessments available to be done that day. The parties dispute whether those assessments had to be done that day to be timely and the extent of Osborne's responsibility to do them. Osborne returned to the unit around 1:30 p.m.

{¶ 6} Anunike questioned the co-worker about why she performed all the assessments, reviewed video from that day, and filed an incident report. The incident report prompted an administrative investigation into whether Osborne had been away from her desk for several hours and failed to complete a work assignment. A pre-disciplinary hearing was held on the matter and the hearing officer, who is Caucasian, determined there was just cause to discipline Osborne. Because Osborne's employment was still subject to a probationary period, ORW was not required to implement progressive discipline. Burkes decided to terminate Osborne's employment based upon the results of the investigation.[2] OWR hired a Caucasian employee to replace Osborne as a Classification Specialist.

{¶ 7} On September 27, 2018, Osborne filed a complaint in the Court of Claims raising claims of reverse race discrimination under R.C. 4112.02 and intentional interference with an employment relationship against ORW. ORW moved for, and the trial court issued, an order dismissing the interference claim on the pleadings pursuant to Civ.R. 12(C). That ruling is not at issue on appeal.

{¶ 8} Following a round of depositions, ORW moved for summary judgment on the reverse race discrimination claim on October 21, 2019. ORW first argued that Osborne could not establish a prima facie case of reverse race discrimination under the test set forth in *Pohmer v. JPMorgan Chase Bank, NA.,* 10th Dist. No. 14AP-429, 2015-Ohio-1229, ¶ 32. ORW contended that the first prong of the analysis could not be met because Osborne failed

---

[2] Osborne contends she was terminated for "not complet[ing the] PREA, but that another co-worker had," "not sign[ing] out on the log book when she left MCC during the day to visit another unit"; and "her absence from the unit for several hours" based on Anunike's review of camera footage. (Appellant's Brief at 16.) ORW, citing Burke's affidavit, asserts Osborne was terminated "because she was away from her job location for several hours and failed to complete a work assignment." (Appellee's Brief at 23.)

to provide evidence that ORW is the unusual employer who discriminates against the majority. ORW additionally argued that Osborne fell short of the fourth prong of the reverse race discrimination analysis since Osborne failed to identify any non-Caucasian employee who was treated more favorably than she was. ORW argued in the alternative that even if Osborne could establish a prima facie case of reverse race discrimination, she could not demonstrate that ORW's stated reasons for terminating her employment were a pretext for discrimination. Specifically, ORW argued that Osborne admitted to the conduct cited for her termination and could not identify a single non-Caucasian, probationary employee who was treated more favorably than her. ORW also pointed out that the person who ultimately fired her, Burke, who is African American, was also the person who promoted her in the first place.

{¶ 9} Osborne opposed the motion, arguing that under the "modified *McDonnell Douglas*[3] framework" summary judgment in favor of ORW was inappropriate. (Memo. Contra at 11.)[4] Osborne contended she could establish her prima facie case because: "Osborne is Caucasian"; "Osborne's Supervisor who initiated the Incident Report which lead to Osborne's termination is black"; "Warden Burkes who signed the termination paperwork is black"; "Osborne was terminated"; "Osborne's co-worker testified that she was [told] by Anunike * * * to treat Osborne differently and leave her out because she was white"; and "Osborne's co-workers were treated differently." (Memo. Contra at 12-13.)

{¶ 10} As examples of her co-workers being treated differently, Osborne contended that:

> • 6/12/17 – Anunike provided only her a list of supervisor expectations (citing depositions of Anunike, Smith, Hawke, Arnett, Reames, and Sexton).
>
> • 6/28/17 – Anunike ignored her offer to assist in the completion of PREA paperwork and contacted another secretary to create the paperwork (citing Osborne Dep.).
>
> • 7/25/17 – While Osborne was discussing an upcoming "mom and kids' day" with two inmates in her office, Smith appeared

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[4] We note that the complaint contains a general allegation of reverse race discrimination. However, Osborne's arguments in her brief to the trial court and on appeal are limited to reverse discrimination claims based on circumstantial evidence.

and indicated that Anunike  sent her, requested that the inmates leave Osborne's office because Osborne neither informed Anunike that she was meeting with them nor did she seek permission from Anunike, escorted the inmates to Smith's  office, and apologized to Osborne about Anunike's treatment of her. (Memo. Contra at 8, citing Osborne Dep.)

• Anunike denied Osborne's requested time off/leave, which was submitted more than one month in advance in accordance with policy, while not denying Osborne's co-workers' requests for time off from work (citing to depositions of Osborne, Stewart,[5] and Smith).

• 9/26/17 – Osborne met with a workplace violence coordinator (Cindy Bartlett) to discuss why Anunike treated her differently than other employees (citing to Bartlett Dep.).

• 11/29/17 – Anunike approached Hawke and instructed her not to speak to Osborne because she was white. Anunike further informed Hawke that "Ms. Osborne does not like me. She doesn't get along with me.  I believe it[']s a racial issue," and that Hawke is not to answer any questions posed by Osborne.   Hawke informed Mohr, Anunike's supervisor. (Memo. Contra at 9, citing Hawke Dep. at 16-18.)

• Stewart left his office for more than 25 minutes to visit with old co-workers in the "Tapestry building" and did not receive an incident report. (Memo. Contra at 9, citing Osborne Dep., Ex. D.[6])

• Reames left the MCC for more than two hours and did not receive an incident report (citing Reames Dep.).

• 2/5/18 – Anunike prepared a mid-probation review of Osborne giving her very low ratings and indicating that she does not have good interviewing skills, which contradicted a review prepared 11 days earlier from another individual who observed Osborne conduct interviews with inmates. Anunike did not mark down Osborne's co-workers but rather sat with

---

[5] A deposition for Stewart, cited by Osborne, is not found in the record. The record reflects that only eight depositions were filed: Osborne, Anunike, Sexton, Smith, Bartlett, Arnett, Hawke, and Reames.

[6]  We note the reference to "Osborne Depo. Exhibit D" may be a typo: Osborne Deposition, Exhibit D is the June 12, 2017 Supervisory Probationary Expectation document; it does not present evidence that Stewart left the office.

them to discuss how to do better (citing to depositions of Anunike, Smith, and Osborne Dep., Ex. L[7]).

{¶ 11} Osborne additionally argued that she presented evidence establishing that each of the reasons relied upon for her termination were invalid. According to Osborne, "others have often completed PREA for another employee" without any resulting discipline (Memo. Contra at 10, citing depositions from Stewart, Smith, and Hawke, all Caucasian); "many employees often forgot to sign in and out" and there has been no similar discipline (Memo. Contra at 10-11, citing Anunike Dep. testimony and Ex. F); and "there is evidence in the record that other individuals in Anunike's office left the MCC without signing out and without permission for several hours and were never disciplined." (Memo. Contra at 11, citing Anunike Dep., Ex. F.)

{¶ 12} ORW filed a reply to the memorandum contra asserting, in relevant part, that Osborne misstated the testimony in the record. In particular, ORW contended that Hawke did not testify that Anunike told Hawke to treat Osborne differently and exclude her because she is white, the testimony did not show Anunike continuously denied Osborne vacation, and no evidence supported Osborne's allegation that Stewart and Reames left the reception area for lengthy periods of time without permission.

{¶ 13} The trial court granted summary judgment in favor of ORW on January 17, 2020. The trial court first noted that, at least for purposes of summary judgment, the second and third prongs of the prima facie case for reverse race discrimination test—that plaintiff suffered an adverse employment action through her employment being terminated and that she was qualified for her position as a Classification Specialist—were not in dispute. The trial court then found Osborne had met the first prong of the prima facie analysis, which requires the plaintiff to show background circumstances supporting the inference that defendant was the unusual employer who discriminated against non-minority employees. Discussing the first prong as "not onerous" to meet, the trial court considered that Osborne's supervisor, Anunike, and the person who terminated her, Burke,

---

[7] "Osborne Depo. Exhibit L" appears to refer to a "Letter of Complaint with Timeline of Events" created by Osborne and presented by the defense. (Osborne Dep. at 5, 138.) However, this document is not found in the appellate record. "It is the appellant's burden * * * to ensure that the record contains all that is necessary for the reviewing court to determine the appeal." *Corbin v. Dailey*, 10th Dist. No. 08AP-802, 2009-Ohio-881, ¶ 5, citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 19 (1988).

were African American and that Osborne pointed to other evidence of racial tension. (Dec. 16, 2019 Decision at 4.) The example of racial tension cited by the trial court include: Hawke's testimony that Anunike once told her, "Ms. Osborne does not like me. She doesn't get along with me, and I believe it's a racial issue"; Osborne's testimony that Anunike referred to Caucasian inmates at ORW as "white trash"; and Osborne's testimony that in 2015 Anunike commented that "she was a princess in Africa, and in America she expected to be treated as such." (Decision at 5, citing Hawke Dep. at 18 and Osborne Dep. at 155, 157.)

{¶ 14} While Osborne established the first three elements of the prima facie case for reverse discrimination under *Pohmer*, the trial court determined that she failed to demonstrate ORW treated Osborne disparately than other similarly situated minority employees under the fourth prong of the analysis. According to the trial court, "[w]hen asked about the several employees who worked under Anunike's supervision, plaintiff identified only one of them as non-Caucasian: Case Manager Maria Jones, whom plaintiff identified as African-American * * * There is no evidence that Jones ever left the unit where they worked during a shift for any purpose, let alone that she did so improperly, whether by failing to record her movements in the log book or otherwise." (Decision at 6.) The trial court further found that "[t]here is no suggestion that Jones, or any other employee to whom plaintiff compares herself for that matter, was a probationary employee." (Decision at 7.) Therefore, because Osborne did not present evidence that ORW treated her disparately from similarly situated minority employees, the trial court concluded she did not establish a prima facie case of reverse race discrimination under R.C. 4112.02. Having found Osborne unable to establish a prima facie case, the trial court declined to consider whether ORW's proffered reason for terminating Osborne was a pretext for discrimination.

{¶ 15} Osborne filed a timely appeal.

## II. Assignments of Error

{¶ 16} Osborne assigns the following assignment of error for our review:

> The Trial Court Determination that Appellant Failed to Present Evidence of a Prima Facie Case is in error.

## III.  Standard of Review

{¶ 17} "Appellate review of summary judgment motions is de novo."  *Alexander v. Columbus State Community College*, 10th Dist. No. 14AP-798, 2015-Ohio-2170, ¶ 11. Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 18} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims.  *Id.; Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV.  Analysis

{¶ 19} In this case, Osborne contends the trial court erred in determining she had not met her burden in presenting a prima facie case of reverse race discrimination.  For the following reasons, we find Osborne's position to lack merit.

{¶ 20} The parties agree the claim at issue in this case is based on circumstantial evidence and governed by a version of the *McDonnell Douglas* framework that is modified for reverse race discrimination claims.  (Appellant's Brief at 21; Appellee's Brief at 21-22.) Under this framework, a plaintiff must demonstrate by a preponderance of the evidence that (1) background circumstances support the inference that the employer was the unusual employer who discriminated against non-minority employees, (2) that the employer took

an action adverse to the plaintiff's employment, (3) that the plaintiff was qualified for the position, and (4) that employer treated the plaintiff disparately from similarly situated minority employees. *Pohmer*, 2015-Ohio-1229 ¶ 29, 32.

{¶ 21} Once a plaintiff establishes a prima facie case of discrimination, a rebuttable presumption shifts the burden to the employer to "articulate clearly a legitimate, nondiscriminatory reason for the adverse action" to support a finding that "unlawful discrimination was not the cause of the challenged employment action." *Refaei v. Ohio State Univ. Hosp.*, 10th Dist. No. 10AP-1193, 2011-Ohio-6727, ¶ 13. "If the employer carries its burden, the burden shifts back to the plaintiff to demonstrate that the reason the employer articulated for taking the adverse employment action is mere pretext for discrimination." *Pohmer* at ¶ 31.

{¶ 22} This appeal centers on whether Osborne sufficiently demonstrated, for purposes of opposing ORW's motion for summary judgment, that ORW treated Osborne "disparately from similarly situated minority employees," the fourth element of the prima facie case of reverse race discrimination claim. *Id.* at ¶ 32.

{¶ 23} To meet the "similarly situated" element of the test, the plaintiff has the burden to show "all of the relevant aspects" of a minority employee's employment are "nearly identical" to those of the plaintiff's employment situation. (Internal quotations omitted.) *Id.* at ¶ 35. Specifically, "the comparable [employee] must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* During the duration of a probationary period, an employee is not similarly situated to his or her non-probationary co-workers. *Mowery v. Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio-1153, ¶ 46.

{¶ 24} In this case, ORW met its initial obligation under Civ.R. 56 by moving for summary judgment on this issue and properly pointing to portions of the record, including references to deposition testimony and Burkes' affidavit, that demonstrate the absence of a material fact on the fourth prong of the prima facie case for reverse race discrimination.

{¶ 25} In opposing summary judgment, Osborne accepted the modified *McDonnell Douglas* framework as the appropriate analysis in this case but nevertheless did not identify a minority employee who engaged in the same conduct without such differentiating or

mitigating circumstances that would distinguish their conduct or ORW's treatment of that employee. As indicated by the trial court, Jones was the only employee who reported to Anunike that was identified by the parties as non-Caucasian, and there is no evidence that Jones engaged in nearly identical conduct to Osborne. On appeal, Osborne continues to argue that she "is treated differently than every other employee who Anunike supervises" without identifying any of those employees as minorities or as probationary employees. (Appellant's Brief at 18.)

{¶ 26} Even though under the summary judgment standard Osborne is "entitled to have the evidence * * * most strongly construed in [her] favor," this does not mean the court is obligated to search the record and identity a similarly situated employee on her behalf. Civ.R. 56(C); *see Pohmer*, 2015-Ohio-1229 at ¶ 42 (finding summary judgment appropriate where the plaintiff failed to identify a similarly situated minority employee who was treated more favorably than the plaintiff); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 19 (a reviewing court is "not obligated to search the record or formulate legal arguments on behalf of the parties").

{¶ 27} Rather, because she did not set forth specific facts showing that a genuine issue exists for trial on the "similarly situated" prong of the reverse race discrimination test, Osborne did not meet her reciprocal burden under Civ.R. 56(E) and *Dresher* at 293. Moreover, Osborne's appellate brief falls short of demonstrating error on appeal. *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2 ("The burden of affirmatively demonstrating error on appeal rests with the [appellant]."); *see also* App.R. 9 and 16(A)(7). Because the trial court did not err in its determination that Osborne failed to present evidence of a prima facie case of reverse race discrimination, her claim fails. *Refaei* at ¶ 43 ("Plaintiff's failure to establish a prima facie case of discrimination is fatal to his claim."). Considering all of the above, we find Osborne's assignment of error lacks merit on the facts and arguments of this case.

{¶ 28} Accordingly, Osborne's assignment of error is overruled.

## V. Conclusion

{¶ 29} Having overruled Osborne's sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur

ZAYAS, J., of the First Appellate District, sitting by assignment
in the Tenth Appellate District.