[Cite as *Tanner v. Ohio Dept. of Reb. & Corr.*, 2025-Ohio-1149.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barry Tanner, | : | |
| Plaintiff-Appellant, | : | No. 24AP-241 |
| | | (Ct. of Cl. No. 2023-00034JD) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

---

D E C I S I O N

Rendered on March 31, 2025

---

**On brief:** *Olsheski Law Co.*, *LPA*, *Jessica L. Olsheski*, for appellant. **Argued:** *Jessica L. Olsheski*.

**On brief:** *Dave Yost*, Attorney General, *Daniel J. Benoit*, and *Heather M. Lammardo*, for appellee. **Argued:** *Daniel J. Benoit*.

---

APPEAL from the Court of Claims of Ohio

JAMISON, P.J.

{¶ 1} Plaintiff-appellant, Barry Tanner, appeals a decision of the Court of Claims of Ohio granting summary judgment in favor defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following, reasons we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Tanner, a black male, was employed as a correctional officer ("CO") at Ross Correctional Institution ("RCI"). Tanner was a relief officer without a permanent post and was able to select a post each workday based on seniority and preference. On April 4, 2020, Tanner chose to post at Housing Unit 4A ("4A"). Tanner was teamed with CO Scott Ahart,

a black male and the permanent CO assigned to 4A. Each housing unit has two COs on duty, and each officer must preserve institutional security and ensure that RCI policy and procedures are strictly complied with.

{¶ 3} Tanner was at the 4A command desk when inmate Marcus Hamilton approached the unit interior door. Tanner allowed inmate Hamilton access into 4A, and inmate Hamilton had a private conversation with Ahart. 4A was in lockdown status, and inmate Hamilton, a resident of another housing unit, was prohibited from entry without a pass.

{¶ 4} Tanner unlocked a cell, and the two COs and Leslie Ervin, the unit case manager, went to another area of the institution. Inmate Nicholas Davis and inmate Hamilton entered the cell, locked the door, and engaged in a fight.

{¶ 5} After the fight, Tanner returned to 4A and unlocked the cell door so the inmates could exit the cell. Inmate Hamilton walked past Tanner at the command desk and left the unit.

{¶ 6} Word of an inmate fight spread around the prison, and RCI launched an investigation. The ODRC Chief Inspector General and Ohio State Highway Patrol took over the investigation once allegations surfaced that Eric Graves, a white male and RCI high ranking employee, arranged the fight.

{¶ 7} The RCI camera system captured all activity on the unit, and a video footage timeline was prepared during the investigation depicting minute-by-minute movement of the COs and inmates. Movement consistent with a physical altercation was captured by video through the cell window. There is no audio. The parties jointly stipulated to the video timeline during an arbitration.

{¶ 8} The investigation determined that Ahart allowed the fight to happen, and Tanner had full knowledge of what was going on. The claim against Graves was unsubstantiated.

{¶ 9} A pre-disciplinary hearing occurred, and Tanner and Ahart were both found to have violated the following rules and were terminated:

> Rule 7: Failure to follow post orders, administrative regulations, policies, or written or verbal directives.

> Rule 8: Failure to carry out a work assignment or the exercise of poor judgment in carrying out an assignment.

Rule 36: Any act or failure to act that could harm or potentially harm the employee, fellow employee(s) or a member of the general public.

Rule 38: Any act, or failure to act, or commission not otherwise set forth herein which constitutes a threat to the security of the facility, staff, any individual under the supervision of the Department, or a member of the general public.

Rule 39: Any act that would bring discredit to the employer.

Rule 50: Any violation [of] ORC 124.34 . . . and for incompetency, inefficiency, unsatisfactory performance, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the Director of Administrative Services or the commission, or any failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.

(Aff. of Kenneth Farrar; Ex. C at 3.) No discipline was imposed on Graves.

{¶ 10} Tanner filed a grievance against his termination, but an arbitrator found just cause for the termination. Tanner then filed an action with the Ohio Civil Rights Commission, who found it was not probable that ODRC had engaged in an unlawful discriminatory practice.

{¶ 11} Tanner filed suit against ODRC, alleging disparate treatment and termination of employment based on race. On March 1, 2024, the Court of Claims issued a decision granting ODRC's motion for summary judgment. Tanner now brings the instant appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Tanner assigns the following three assignments of error for our review:

1. The trial court's decision is against the manifest weight of the evidence.

2. The trial court's decision is not supported in law or fact.

3. Genuine issues of material fact remain as to each and every one of Plaintiff's claims.

## III. STANDARD OF REVIEW

{¶ 13} We review a summary judgment decision on a de novo basis. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898 (10th Dist.). When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Thomas v. Netcare Corp.*, 2018-Ohio-3462 (10th Dist.).

{¶ 14} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 15} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 293. Because summary judgment can terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992).

## IV. LEGAL ANALYSIS

{¶ 16} Tanner's assignments of error are related, and we shall consider them jointly. We first note that an appellate court reviews a summary judgment decision pursuant to the standard set out in Civ.R. 56, and not under a manifest-weight standard. *Grenga v. Youngstown State Univ.*, 2011-Ohio-5621 (10th Dist.). An appellate court is not able to weigh the evidence when reviewing a summary judgment decision. *Hamilton v. Ohio Dept. of Rehab. & Corr.*, 2007-Ohio-1173 (10th Dist.). We have held that an "appellate court may

summarily overrule assignments of error seeking reversal of summary judgment based on the manifest weight of the evidence." *White v. Westfall*, 2009-Ohio-4490, ¶ 9 (10th Dist.).

{¶ 17} Therefore, Tanner's first assignment of error is overruled.

{¶ 18} Tanner's second and third assignments of error state, generally, that the Court of Claims erred in determining that there were no genuine issues of material fact on his claims. Tanner asserts ODRC discriminated against him based on his race.

{¶ 19} R.C. Ch. 4112 governs employment discrimination actions brought under Ohio law. It is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A). An aggrieved party is able to file a civil action for a violation of R.C. Ch. 4112. R.C. 4112.99. Ohio courts may look to federal case law interpreting Title VII of the Civil Rights Act of 1964 when examining employment discrimination cases made under state law in addition to Ohio case law. *Nelson v. Univ. of Cincinnati*, 2017-Ohio-514 (10th Dist.).

{¶ 20} To prevail in an employment discrimination case, a successful plaintiff must prove discriminatory intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759 (10th Dist. 1998). In the absence of direct evidence of discrimination, a plaintiff seeks to establish discriminatory intent through indirect methods of proof using the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden of persuasion is on the plaintiff when using either method of proof. *Miller v. Potash Corp. of Saskatchewan, Inc.*, 2010-Ohio-4291 (3d Dist.).

{¶ 21} Under the *McDonnell Douglas* evidentiary framework, a plaintiff establishes a prima facie case of discrimination by showing that he or she (1) is a member of a statutorily protected class, (2) was subjected to an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person not belonging to the protected class or that the employer treated a similarly situated, non-protected person more favorably. *Moody v. Ohio Dept. of Mental Health & Addiction Servs.*, 2021-Ohio-4578, ¶ 17 (10th Dist.). If a plaintiff can establish a prima facie case, a presumption of discrimination

is created.  *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 15 (10th Dist.).

{¶ 22} However, once a plaintiff has demonstrated a prima facie case of discrimination, such a showing does not end the inquiry.  The burden of production then shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the employment action.  *Dautartas v. Abbott Laboratories*, 2012-Ohio-1709 (10th Dist.). If the employer overcomes the presumption by demonstrating such a reason, the burden shifts back to the plaintiff to prove that the offered reason was a pretext for unlawful activity.  *Refaei v. Ohio State Univ. Hosp.*, 2011-Ohio-6727 (10th Dist.).  A plaintiff must demonstrate pretext by showing that the reason was false and that the real reason was discrimination.  *Knepper v. Ohio State Univ.*, 2011-Ohio-6054 (10th Dist.).

{¶ 23} Discrimination can be shown by favorable treatment to a similarly situated non-protected person.  *Smith v. Stow*, 2023-Ohio-4302 (9th Dist.).  Where a plaintiff in a discrimination claim contends his or her employer provided more favorable treatment to a non-protected similarly situated person, the individual with whom the plaintiff seeks to compare his treatment must be similar in all relevant respects.  *DeGarmo v. Worthington City Schools Bd. of Edn.*, 2013-Ohio-2518 (10th Dist.).  "A person is not similarly situated unless the conduct engaged by the proffered individual is of 'comparable seriousness' to the conduct that predicted the employee/plaintiff's termination."  *Waddell v. Grant/Riverside Med. Care Found.*, 2017-Ohio-1349, ¶ 33 (10th Dist.), citing *Ames v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4774, ¶ 42 (10th Dist.).  Courts must consider whether the proffered individual dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without mitigating or differentiating circumstances that would distinguish either their conduct or the employer's treatment of them.  *Mittler v. OhioHealth Corp.*, 2013-Ohio-1634, ¶ 36 (10th Dist.).

{¶ 24} Tanner asserts he was subject to discrimination when he was terminated without evidence and a similarly situated, non-protected person was not terminated.  In granting summary judgment for ODRC, the Court of Claims determined there was no direct proof of discrimination and found that Tanner was unable to meet the fourth prong of an indirect evidence claim that a similarly situated, non-protected person was treated more favorably.  The court also concluded that even if Tanner presented a prima facie case of

racial discrimination, he failed to show that his termination was a pretext for unlawful race discrimination.

**{¶ 25}** Two employees are not similarly situated in all relevant respects if there is a meaningful distinction between them that explains their employer's different treatment of them. *Poppy v. Willoughby Hills City Council*, 2005-Ohio-2071, ¶ 41 (11th Dist.), citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). A non-manager employee is not similarly situated with another employee who has an administrative or managerial role. *Lange v. Honda of America Mfg., Inc.*, 2004-Ohio-2060 (3d Dist.). A supervisor has a position of authority which creates a meaningful distinction from the non-supervisory employee and "explains the employer's different treatment of the two." *Pohmer v. JPMorgan Chase Bank, N.A.*, 2015-Ohio-1229 (10th Dist.).

**{¶ 26}** Tanner and Graves did not have similar job titles, did not report to the same supervisor, and did not possess the same level of responsibility. *Lindsay v. Children's Hosp. Med. Ctr. of Akron*, 2009-Ohio-1216 (9th Dist.) (plaintiff with no administrative duties not similarly situated with other physicians who are officers of the medical department with assigned administrative duties). Tanner has not produced any facts to establish that Graves was similarly situated in all respects.

**{¶ 27}** ODRC investigated the incident, and found cause to terminate Tanner and Ahart, but did not find grounds to discipline Graves. Tanner's role in the incident was corroborated by video evidence and was confirmed in arbitration, while the claim against Graves was unsubstantiated.

**{¶ 28}** There was ample support in the record that Tanner violated RCI rules. Immediately after talking with inmate Davis, Tanner unlocked a vacant cell, making sure the cell door was left ajar. Unattended cells are required to be locked. Inmates then entered the cell and began arranging furniture to prepare for the fight. Tanner and Ahart passed the cell on a routine security check, but ignored the red light indicating the door was unlocked. Tanner allowed inmate Hamilton into 4A when all inmates should be in their cell. Just before the inmates lock the cell door and start to fight, Tanner enlisted the unit manager to go on a supply run off the unit, and Ahart left a few minutes later.

{¶ 29} Tanner returned to unlock the cell after being notified by inmate Duane Fisher the fight was over and allowed inmate Hamilton to exit the unit. Tanner and Ahart then tasked inmates to clean the bloody cell after the fight. The unit logbook contained falsified entries for the events that day.

{¶ 30} Graves was not similarly situated and did not engage in the same conduct as Tanner. In April 2020, Graves served in a management position as correction warden analyst and was the Security Threat Group ("STG") coordinator, responsible for monitoring gang activity at RCI. Graves's role was to settle gang violence, and he acknowledged meeting one time with inmate Davis in furtherance of his duties. Graves does not wear a uniform and does not perform CO duties. Graves denied approving the fight.

{¶ 31} Graves was linked to the fight by inmate Davis. CO James Skaggs was escorting inmate Davis to a medical evaluation and then to segregation for the fight when inmate Davis demanded to speak with Graves. Inmate Davis stated that Graves was the one who arranged the fight, and that inmate Davis had been in Graves' office shortly before the incident. Skaggs submitted an incident report, and RCI broadened its investigation to include Graves.

{¶ 32} Inmate Davis was the sole voice that alleged Graves was involved, and he gave subsequent conflicting statements. Eighteen individuals, including RCI staff and inmates, were interviewed during the investigation, and no one stated Graves approved the fight.

{¶ 33} The investigation determined inmates arranged the fight, noting inmates Davis, Fisher, and Hamilton held a pre-fight meeting in the 4A recreation room while Ahart was on duty. Monitored phone records indicate inmates Davis and Hamilton concocted a plot to use the fight as the basis for a civil lawsuit. The inmates' claims, that they were forced to fight by COs and Graves was involved, were not substantiated.

{¶ 34} The Court of Claims found that the evidence implicating Tanner was stronger than evidence showing Graves arranged the incident. Violation of a company policy is a legitimate, non-discriminatory basis for terminating an employee. *Morrissette v. DFS Servs., L.L.C.*, 2013-Ohio-4336 (10th Dist.). Such conduct distinguishes Graves' circumstances from Tanner's, and "renders the comparison inapposite." *Mittler*, 2013-Ohio-1634, at ¶ 38 (10th Dist.). There are no genuine issues of material fact here.

{¶ 35} Tanner has not established that Graves was similarly situated in all respects or that Graves' conduct was of comparable seriousness to his conduct, and thus, has failed to establish a prima facie case of discrimination under the *McDonnell Douglas* test. *Osborne v. Ohio Reformatory for Women*, 2021-Ohio-1036 (10th Dist.). Because the prima facie case fails, we need not address if ODRC's proffered reason was mere pretext.

{¶ 36} Accordingly, Tanner's second and third assignments of error are overruled.

## V. CONCLUSION

{¶ 37} Having overruled Tanner's three assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and EDELSTEIN, JJ., concur.

_____