DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, William Atkinson, appeals the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Appellees. This Court affirms.
 I. {¶ 2} Appellant, an African-American, has been employed by Akron Public Schools since in 1971. During the time of his employment, Appellant has held various positions including music teacher, dean of students, and principal at an elementary school. In 2002, Appellant sought and received the position of principal at Buchtel High School ("Buchtel"). Appellant was awarded the position following the recommendation of Superintendent Sylvester Small and the approval of Appellee, the Akron Board of Education (the "Board").
 {¶ 3} During his time at Buchtel, Appellant was supervised by Appellee, Frederick Schuett. As part of his duties, Appellee Schuett provided semi-annual evaluations of Appellant's performance at Buchtel. During these evaluations, Appellee Schuett noted several areas in which he felt Appellant could improve his performance. In the initial evaluations, Appellee Schuett noted that Appellant needed to spend more time on the premises at Buchtel. In response, Appellant noted that he had applied for and received a grant that placed Buchtel in the Knowledge Works program and had aided in the progress Buchtel was making in the Project GRAD program. These obligations, Appellant asserted, required him to attend training away from Buchtel.
 {¶ 4} Problems at Buchtel then drew increasingly more attention from the public. At the beginning of the 2003-2004 school year, many students at Buchtel did not have schedules. School board members received calls from concerned parents that indicated their children were not being placed in the proper classes. While the parties dispute the actual cause of the scheduling error, Appellant admitted during his deposition that, as principal, he was ultimately responsible for any error. Other parents called board members to report that students were roaming the halls unsupervised. Still other parents complained that phones were not being answered at the school and that messages were not being responded to by school officials. Finally, staff at Buchtel and parents complained that Appellant was away from the building too often to attend to other matters.
 {¶ 5} Appellant noted that during his brief tenure he had shortcomings as he was still learning the responsibilities of a high school principal and acknowledged that problems continued at Buchtel under his leadership. He admitted that scheduling errors had taken place and that his obligations to Project GRAD and Knowledge Works required him to attend meetings away from campus. Appellant further noted that the staff was resistant to implement his suggested changes, often stating that their union contracts did not require them to perform the tasks requested by Appellant. Appellant went on in his deposition to note that despite these initial problems, he felt that Buchtel was making significant strides forward under his leadership. Further, Appellant does not dispute that as a result of his evaluations, he was placed on a plan of assistance and was urged to improve his performance.
 {¶ 6} The concerns of the parents at Buchtel and the problems that Appellant admitted he faced continued during his time as principal. As a result of these continuing problems at Buchtel, Appellee Schuett presented Appellant with a settlement agreement. The agreement indicated that Appellant would be reassigned during the current school year (2003-2004) but would maintain his current salary. Under the agreement, Appellant would waive his rights under the Revised Code and Superintendent Small would recommend that he receive an administrative contract as an elementary principal. Appellant signed the settlement agreement on December 9, 2003. Thereafter, Appellant was reassigned to an administrative position. On March 22, 2004, in executive session, the Board approved the settlement agreement. When the Board returned to open session, Superintendent Small made a number of recommendations for administrators, including Appellant.
 {¶ 7} As a result of the above, each of the provisions contained in the agreement was fulfilled. However, following Superintendent Small's recommendation, the Board voted against awarding Appellant a position as an elementary principal. Thereafter, Appellant filed suit in the trial court, alleging that he was entitled to automatic renewal of his administrative contract under the Revised Code and that Appellees had discriminated against him on the basis of his race.
 {¶ 8} Following lengthy discovery, Appellees moved for summary judgment on each of Appellant's claims. Appellant responded in opposition. Ultimately, the trial court agreed with Appellees and dismissed each of Appellant's claims. Appellant timely appealed the trial court's grant of summary judgment, raising four assignments of error for review. For ease of analysis, several of Appellant's assignments of error have been consolidated.
 II. First Assignment of Error
"THE LOWER COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT-APPELLEES ON PLAINTIFF-APPELLANT'S CLAIM FOR SPECIFIC PERFORMANCE OF HIS NON-RENEWED ADMINISTRATIVE CONTRACT."
 Second Assignment of Error
"THE LOWER COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON PLAINTIFF-APPELLANT'S CLAIM FOR ENFORCEMENT OF THE SETTLEMENT AGREEMENT."
 {¶ 9} In his first and second assignments of error, Appellant argues that the trial court erred in granting summary judgment on his claims regarding the enforceability of the settlement agreement the parties entered. We disagree.
 {¶ 10} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948.
 {¶ 11} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732,735.
 {¶ 13} In support of their motion for summary judgment on Appellant's contractual claims, Appellees rely upon the affidavits of Appellant, Appellee Schuett, the members of the Board, counselors from Buchtel High School, and other administrators in the school system, including Superintendent Small. Primarily, however, Appellees rely upon the settlement agreement entered into by the parties. The agreement reads as follows:
"The Akron Board of Education (the Board) and William Atkinson (the administrator) hereby agree that, for their mutual benefit and consideration, the administrator will voluntarily accept a reassignment from his current position as a high school principal to another administrative position to be determined by the Superintendent with no loss of pay for the balance of his current contract year and that the Superintendent will recommend the administrator for a subsequent one-year administrative contract as an elementary principal at an appropriate, but lower, rate of pay subject to the approval of the Board.
"In exchange therefore, the administrator hereby knowingly and voluntarily waives any and all rights he may have under Ohio Revised Code Section 3319.02, 3319.11, 3319.111, and 3319.17 as well as any [and] all board policies to contest the non-renewal of his existing administrator contract which will be deemed to be non-renewed upon the last day of the administrator's current contract year without further action from the Board. The administrator agrees to accept reassignment without protest during the current contract year and to accept and faithfully perform the duties of elementary principal if the Board so approves of a new one-year contract.
"The administrator acknowledges reading this agreement and knowingly and voluntarily entering into this agreement by placing his signature below."
 {¶ 14} In response, Appellant relied upon the same evidence provided by Appellees in their motion. However, in his first two assignments of error, Appellant asserts that the above settlement agreement is both unenforceable and requests that it be specifically performed. While this Court notes that these arguments are inherently in conflict, each argument is addressed below.
 {¶ 15} A valid contract consists of an offer, acceptance, and consideration. Tersigni v. Gen. Tire, Inc. (1993),91 Ohio App.3d 757, 760. Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus. When the terms in a contract are unambiguous, this Court will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 246. Appellant, however, has argued that the plain language of the above settlement agreement must be ignored because the agreement itself is invalid for seven reasons. We find that each of Appellant's assertions lack merit.
 {¶ 16} Appellant first asserts that the settlement agreement is illusory. We disagree. "[A] contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory."Century 21 Am. Landmark, Inc. v. McIntyre (1980),68 Ohio App.2d 126, 129, citing 1 Williston on Contracts (3 Ed. 1957) 140, Section 43. Appellant argues that the Board retained such an unlimited right because it was not required to place Appellant in an administrative position in the year following his reassignment. Appellant, however, ignores the obligations the contract creates for the Board and its representatives. The Board was required to pay Appellant at his current salary, despite his reassignment to a lower paying job. In addition, Superintendent Small was required to recommend Appellant for an administrative position. Neither of these obligations permitted the Board to determine the nature or extent of its performance. In contrast, these provisions created clear and definite obligations which were fulfilled by the Board. As such, the trial court properly concluded that the agreement was not illusory.
 {¶ 17} Appellant next argues that the settlement agreement must fail for lack of consideration. This Court disagrees.
"Consideration may consist of either a detriment to the promisee or a benefit to the promisor. A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." (Internal citations omitted.) Lake Land Emp. Group of Akron, LLCv. Columber, 101 Ohio St.3d 242, 2004-Ohio-786, at ¶ 16.
In the instant matter, the Board provided consideration by agreeing to continue to pay Appellant at a higher salary than his new position warranted (a benefit) in exchange for Appellant's waiver of his statutory rights (a forbearance). Accordingly, Appellant's assertion that the settlement agreement lacked consideration must fail.
 {¶ 18} Appellant also argues that the settlement agreement's plain terms must not be enforced under the theories of fraud, equitable estoppel, and promissory estoppel. Under each theory, Appellant relies upon his own deposition testimony in which he testified that Appellee Schuett informed him that, at the time he signed the settlement agreement, that it was a "done deal." Appellant testified that he believed that Appellee Schuett's statement unequivocally referred to the Board's approval of his future administrative contract.
 {¶ 19} We begin by noting that Appellee Schuett's statement, if made, is ambiguous, at best. Even viewing the evidence in a light most favorable to Appellant, his claims under the theories of fraud, promissory estoppel, and equitable estoppel still must fail. Each theory relied upon by Appellant contains an element of justifiable or reasonable reliance. Cohen v. Lamko, Inc.
(1984), 10 Ohio St.3d 167, 169 (fraud); Doe v. Blue Cross/BlueShield (1992), 79 Ohio App.3d 369, 379 (equitable estoppel);Current Source, Inc. v. Elyria City School Dist.,157 Ohio App.3d 765, 2004-Ohio-3422, at ¶ 31 (promissory estoppel). This Court finds that any reliance by Appellant on the ambiguous statements made by Appellee Schuett was not reasonable and justified.
 {¶ 20} Appellant acknowledged during his deposition that he read and understood the terms of the settlement agreement that he signed. The agreement unequivocally left the fate of Appellant's administrative contract in the hands of the Board. In the one page agreement, Appellant's administrative contract is noted as "subject to the approval of the Board" and his continued employment as an administrator occurs only "if the Board so approves of a new one-year contract." In addition, during his deposition the following colloquy took place.
"Q. So you knew, at least beginning in 1993, that any contract for any administrative position had to come through the approval of the board, correct?
"A. Yes, that's correct.
"Q. Now, when you approached Dr. Small about this promotion, you knew, of course, that he was superintendent, correct?
"A. That's correct.
"Q. You also knew that the superintendent makes recommendations to the board regarding who should be an administrator?
"A. Yes.
"Q. And who the board should enter into a contract with, correct?
"A. Which he did and they approved.
"Q. * * * You knew and understood that when you approached him, that as superintendent of the schools, he makes recommendations to the board regarding who he believes should be an administrator * * * correct?
"A. Yes.
"Q. And the board takes that under consideration and they either agree or disagree, correct?
"A. Correct.
"Q. And if they agree, the person who has been recommended gets a contract, correct?
"A. Correct.
"Q. And if the board disagrees, the person who has been recommended does not get a contract, correct?
"A. Correct.
"Q. So * * * you understood that ultimately it was the decision of the board who would be the principal or would be given a contract to be the principal * * *?
"A. Yes."
Accordingly, the record before this Court demonstrates that Appellant had substantial knowledge of the process of obtaining an administrative contract. It is undisputed that he knew that Appellee Schuett could not offer, nor guarantee him an administrative contract. Accordingly, any reliance on Appellee Schuett's ambiguous statement that this was a "done deal" was unreasonable and unjustified. Accordingly, Appellant's claims regarding fraud, promissory estoppel, and equitable estoppel must fail.
 {¶ 21} Additionally, Appellant argues that the parties entered the settlement agreement under a mutual mistake of law. In his brief, Appellant has not identified what this mistake of law purportedly involved. In fact, Appellant has not supported this argument in any manner. See App.R. 16(A)(7). Even assuming that Appellant's argument is premised on his belief that he would be awarded a contract, the record does not support that the Board held such a mistaken belief. The Board members who approved the settlement agreement each testified unequivocally that they did not feel that the settlement agreement bound them to offer Appellant an administrative contract. Accordingly, based upon his failure to properly support his argument and the complete lack of support in the record for his contention that the parties were mutually mistaken, Appellant's claim must fail.
 {¶ 22} Finally, Appellant asserts that the settlement agreement cannot be enforced because it is ambiguous. We disagree. As noted above, there is nothing ambiguous about the terms of the settlement agreement. Appellant would voluntarily accept reassignment; the Board would continue to pay him the salary of a high school principal; Superintendent Small would recommend Appellant for an administrative contract; and Appellant would waive his rights under the Revised Code. Appellant has failed to persuade this Court that any of these provisions are anything but clear and concise.
 {¶ 23} Accordingly, we find that the settlement agreement entered into by the parties is enforceable. As such, Appellant has waived his rights under the Revised Code and the trial court properly determined that he is not entitled to the automatic renewal of his administrative contract under R.C. 3319.11. Accordingly, Appellant's first assignment of error lacks merit.
 {¶ 24} Finally, Appellant seeks specific performance of the settlement agreement. However, Appellant seeks to enforce provisions which are not present in the agreement. As noted above, the requirements of the contract were simple and straightforward. It is undisputed from the record that each of those requirements has been fulfilled. Accordingly, Appellant's second assignment of error lacks merit.
 {¶ 25} Appellant's first and second assignments of error are overruled.
Third Assignment of Error
"THE LOWER COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON PLAINTIFF-APPELLANT'S RACE DISCRIMINATION CLAIM PURSUANT TO O.R.C. § 4112."
 {¶ 26} In his third assignment of error, Appellant contends that the trial court erred in granting summary judgment on his claim of racial discrimination. This Court disagrees.
 {¶ 27} It is an unlawful discriminatory practice for any employer "to discharge without just cause, to refuse to hire, or otherwise discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of race. R.C. 4112.02(A). Additionally, the Ohio Supreme Court has held that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. 4112. Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. RightsComm. (1981), 66 Ohio St.2d 192, 196.
 {¶ 28} To establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person. McDonnell DouglasCorp. v. Green (1973), 411 U.S. 792, 802, 36 L.Ed.2d 668. "[A] plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that `a comparable non-protected person was treated better.'" (Emphasis sic.)Mitchell v. Toledo Hosp. (C.A. 6, 1992), 964 F.2d 577, 582. See, also, Talley v. Bravo Pitino Rest., Ltd. (C.A. 6, 1995),61 F.3d 1241, 1246-47. When using the comparable non-protected person was treated better element, a plaintiff "must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." Mitchell, 964 F.2d at 582-83. The parties to be compared must be similarly-situated in all respects, that is they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. at 583. In Talley, the Sixth Circuit held: "showing that similarly situated non-protected employees were treated more favorably than the plaintiff is not a requirement but rather an alternative to satisfying the fourth element of the prima facie case [.]" Talley, 61 F.3d at 1247. "Thus, discrimination can be shown either by replacement by a non-protected person or by favorable treatment to comparable persons similarly-situated."Howell v. Summit Cty., 9th Dist. No. 20958, 2002-Ohio-5257, at ¶ 15. Finally, a plaintiff may show that he was the victim of a discriminatory practice by either direct evidence or through indirect evidence. Byrnes v. LCI Communications Holdings Co.
(1996), 77 Ohio St.3d 125, 128.
 {¶ 29} To succeed utilizing direct evidence, a plaintiff "must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation." Byrnes,77 Ohio St.3d at 130. Appellant did not identify a single remark or action by any of the Appellees that indicated that race was a consideration in the nonrenewal of his contract. Instead, Appellant relies upon the statements of Board member Linda Omobien that she felt that the Board was racially motivated. Ms. Omobien's conclusory statements, however, are no more direct evidence of racial discrimination than Appellant's own conclusory statements. Such accusations are wholly unsupported by the record before this Court.
 {¶ 30} During discovery in this matter and in his pleadings, Appellant has often used the terms sabotage and trickery. However, the record does not support Appellant's assertions. The record before this Court contains no direct evidence of any statement or any action that raises even the inference of racial discrimination. Appellant has not identified a single statement by any party that would indicate that race played a role in the Board's decision. Each Board member has emphatically denied that race was ever a consideration in their decision. Further, despite his accusations that Appellee Schuett planned his demise from the inception of his employment as principal and acted in a racist manner, Appellant has failed to identify a single instance in which Appellee Schuett utilized Appellant's race or even referenced Appellant's race. Like the Board, Appellee Schuett's undisputed testimony has remained consistent; Appellant was not awarded a new contract and was reassigned from Buchtel because he failed to remedy the problems that existed under his leadership. As Appellant had provided no direct evidence of discrimination, we proceed to examine whether Appellant has established his prima facie case through indirect evidence.
 {¶ 31} Appellant has not provided evidence to support the four prongs of his prima facie case. It is undisputed that Appellant is a member of a protected class, thus satisfying the first prong of McDonnell Douglas. However, even assuming that Appellant has established the second and third prongs of his prima facie case, which we find unlikely, Appellant has offered no evidence in support of the fourth prong.
 {¶ 32} We begin by noting that Appellant has not established that he was replaced by a non-protected person. The undisputed evidence demonstrates that Appellant was replaced at Buchtel by an African-American. Further, Appellant produced no evidence regarding any of the other administrators in the school system at any level. Accordingly, Appellant was required to demonstrate his claim through the use of comparables. Talley, 61 F.3d at 1247
 {¶ 33} In support of his claim, Appellant states that "non-minority individuals were not singled out, forced to resign, subjected to vague and confusing evaluations and criticisms, and otherwise harassed by [Mr.] Schuett." However, in his brief to this Court and in the trial court, Appellant has failed to identify a single administrator that was treated differently than Appellant. In fact, Appellant has failed to even identify another administrator, let alone another administrator whose employment was similar in all relevant aspects to Appellant's employment.Ercegovich v. Goodyear Tire Rubber Co. (C.A.6, 1998),154 F.3d 344, 352. Accordingly, Appellant failed to establish a prima facie case of racial discrimination and the trial court properly granted summary judgment in favor of Appellees. Appellant's third assignment of error is overruled.
Fourth Assignment of Error
"THE LOWER COURT ERRED BY FAILING TO ADDRESS THE ISSUE OF WHETHER THE PLAINTIFF-APPELLANT IS ENTITLED TO PUNITIVE DAMAGES."
 {¶ 34} In his final assignment of error, Appellant asserts that the trial court erred in failing to determine whether he was entitled to punitive damages. This Court disagrees.
 {¶ 35} The trial court found that Appellant's claim for punitive damages was moot after finding in favor of Appellees on each of Appellant's claim. As this Court has found no error in the trial court's disposition, Appellant's claim for punitive damages must fail. See Sony Electronics, Inc. v. Grass ValleyGroup, Inc. (Mar. 22, 2002), 1st Dist. Nos. C-010133 C-010423, at *4 (finding that a punitive damages claim may not stand alone). Accordingly, Appellant's fourth assignment of error is overruled.
 III. {¶ 36} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J., Whitmore, J., concur.