[Cite as *Smith v. Stow*, 2023-Ohio-4302.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| BARRY C. SMITH | | C.A. No. 30357 |
|---|---|---|
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF STOW, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | | CASE No. CV-2020-02-0518 |

DECISION AND JOURNAL ENTRY

Dated: November 29, 2023

---

CARR, Judge.

**{¶1}** Appellant, Officer Barry C. Smith, appeals the judgment of the Summit County Court of Common Pleas. This Court reverses and remands for further proceedings.

I.

**{¶2}** Officer Smith began his career with the Stow Police Department ("the Department") in 1996. Officer Smith is the only African American employed with the Department. During the school year, Officer Smith serves as the school resource officer at Stow Munroe Falls High School. Officer Smith is a general patrol officer during the summertime.

**{¶3}** In February 2020, Officer Smith filed an employment discrimination action against the City of Stow and Chief of Police Jeffrey Film. The complaint contained one count of disparate treatment based on race in violation of R.C. 4112.02(A); two counts of failure to promote based on race in violation of R.C. 4112.02(A); one count of aiding and abetting in discrimination in violation of R.C. 4112.02(J); and one count of retaliation in violation of R.C. 4112.02(I). Officer

Smith subsequently filed an amended complaint where he set forth an additional count of discrimination based on race in violation of R.C. 4112.02(A). The City and Chief Film filed an answer denying the allegations in the amended complaint.

{¶4} Thereafter, the City and Chief Film filed a motion for summary judgment. Officer Smith filed a brief in opposition to the motion and the City and Chief Film replied thereto. The trial court ultimately issued a journal entry granting summary judgment in favor of the City and Chief Film.

{¶5} On appeal, Officer Smith raises five assignments of error. This Court rearranges and consolidates certain assignments of error in order to facilitate review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DETERMINING OFFICER SMITH PRESENTED INSUFFICIENT EVIDENCE TO MEET THE FOURTH ELEMENT OF HIS PRIMA FACIE CASE OF DISCRIMINATION UNDER R.C. 4112.02.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY IMPROPERLY APPLYING THE *MCDONNELL DOUGLAS/BURDINE* BURDEN-SHIFTING FRAMEWORK AND USING THE CITY OF STOW AND CHIEF FILM'S PROFFERED NONDISCRIMINATORY MOTIVES TO DEFEAT OFFICER SMITH'S PRIMA FACIE CASES OF DISCRIMINATION AND RETALIATION UNDER R.C. 4112.02.

{¶6} In his first assignment of error, Officer Smith argues that the trial court erred in determining that he failed to satisfy the fourth element of his prima facie case for discrimination under R.C. 4112.02(A) in regard to the Department's promotional process. Officer Smith further argues in his fifth assignment of error that the trial court misapplied the *McDonnell Douglas* burden-shifting framework in analyzing whether he made a prima facie case for discrimination.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} R.C. 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race[] * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms,

conditions, or privileges of employment, or any matter directly or indirectly related to employment."

**{¶11}** The Ohio Supreme Court has held that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

**{¶12}** When a plaintiff relies on indirect evidence of racial discrimination in support of a claim brought under R.C. 4112.02(A), courts analyze the claim under a burden-shifting framework. *Dukes v. Associated Materials, L.L.C.*, 9th Dist. Summit No. 27091, 2014-Ohio-4322, ¶ 7. The plaintiff must first establish a prima facie case of discrimination. *Id.* "Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Rivers v. Cashland*, 9th Dist. Summit No. 26373, 2013-Ohio-1225, ¶ 16, quoting *Smith v. Kelly*, 2d Dist. Clark No. 2011 CA 77, 2012-Ohio-2547, ¶ 19. "Once the employer states a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason articulated by the defendant was mere pretext." *Rivers* at ¶ 16, quoting *Smith* at ¶ 19.

**{¶13}** It is well settled that in order to establish a prima facie case of discrimination, a plaintiff must show (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "[A] plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that a comparable non-protected person was treated better." (Internal quotations omitted.) *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). When attempting to show that a comparable non-protected person was treated better, a plaintiff

"must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Id*. at 583. The parties to be compared must be similarly-situated in all respects, meaning they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. "Thus, discrimination can be shown either by replacement by a non-protected person or by favorable treatment to comparable persons similarly-situated." *Howell v. Summit Cty.*, 9th Dist. Summit No. 20958, 2002-Ohio-5257, ¶ 15.

### Background

**{¶14}** One of the theories of recovery set forth in Officer Smith's complaint was that the City and Chief Film violated R.C. 4112.02(A) when it promoted Officer Miller and Officer Dirker to the rank of sergeant but denied a promotion to Officer Smith. Based on the April 2014 Sergeant's Examination, Officer Miller, Officer Dirker, and Officer Smith were deemed qualified for a promotion. Officer Miller and Officer Dirker, both of whom are Caucasian, were promoted in 2014 and 2015, respectively. Officer Smith alleged that he was denied a promotion on the basis that he was African American. Officer Smith further alleged that Chief Film undertook a restructuring of the police department that eliminated a sergeant position that Officer Smith was eligible to fill.

**{¶15}** The trial court granted summary judgment to Stow on the basis that Officer Smith failed to establish a prima facie case of discrimination. While the trial court concluded that Officer Smith met the first three elements of the prima facie case, the trial court determined that Officer Smith failed to satisfy the fourth element, namely that a similarly situated nonprotected person

received better treatment than Officer Smith. The trial court declined to analyze whether Officer Miller was a similarly situated employee because Officer Smith stated during his deposition that he did not believe that Officer Miller's promotion was based on racial discrimination. The trial court concluded that Officer Dirker was not similarly situated to Officer Smith because Officer Dirker had obtained a higher score on the 2014 Sergeant's Examination. The trial court emphasized that the Department had an established practice of implementing the "rule of three" by giving the first promotion opportunity to the officer with the highest exam score. Finally, the trial court ruled that Officer Smith had failed to make a prima facie case with respect to the vacant sergeant position because there was no evidence that a non-protected person received the promotion instead of him.

Discussion

{¶16} In his first assignment of error, Officer Smith argues that the trial court erred when it concluded that Officer Miller and Officer Dirker were not similarly situated to Officer Smith given that all three officers were deemed qualified for a promotion pursuant to the 2014 Sergeant's Exam. Officer Smith further contends that he made a prima facie case with respect to the vacant sergeant position given that Chief Film's restructuring of the Department resulted in the only minority officer with a top three score on the 2014 Sergeant's Exam being denied a promotion while two Caucasian officers received promotions. In his fifth assignment of error, Officer Smith contends that the trial court improperly considered the nondiscriminatory reasons proffered by the City and Chief Film when analyzing whether Officer Smith made a prima facie case of discrimination.

{¶17} The City and Chief Film presented extensive summary judgment evidence about the promotional process within the Department. Chief Film became police chief in 2014 by way

of an internal promotion. Chief Film's promotion caused a series of vacancies down the chain of command in the Department. In 2014, the Civil Service Commission administered an exam to identify candidates to fill a vacancy in the sergeant rank. Five patrol officers participated in the exam. The Civil Service Commission then certified the three officers who earned the highest scores, Officer Miller (Total Score: 97.987%), Officer Dirker (Total Score: 90.360%), and Officer Smith (Total Score: 90.174%). Notably, under the Civil Service Rules, the City had the ability to promote any one of the three individuals certified by the Civil Service Commission. This dynamic is generally referred to as the "rule of three." During his deposition testimony, Chief Film acknowledged that he had the authority to promote any of the three individuals from the list. Chief Film suggested that at the beginning of his tenure he continued the practice of his predecessor, Chief Dirker, who relied solely on their examination scores during the promotion process.[1]

{¶18} Officer Miller was promoted to the rank of sergeant in May 2014 based on the recommendation of Chief Dirker. Although then-Lieutenant Film had been named the next police chief, he did not assume that role until June 2014. Mayor Sara Kline acted on the recommendation of Chief Dirker in moving Stow City Council to approve Officer Miller's promotion. Chief Film stated in his deposition that he was not involved with this process.

{¶19} In June 2014, Chief Film was notified that Sergeant Dunton, who supervised the detective bureau, intended to retire in September. Although Sergeant Dunton's retirement provided an opportunity to promote another officer to the rank of sergeant, the City declined to fill the position and instead assigned an administrative lieutenant to supervise the detective bureau. Both Mayor Kline and Chief Film gave deposition testimony indicating that the decision not to fill the sergeant position was driven by a combination of departmental needs and budgetary

---

[1] Officer Dirker is the son of Chief Dirker.

constraints. The City failed to pass a tax levy in 2013. Mayor Kline stated that it was her belief that hiring additional patrol officers was a priority over filling the sergeant vacancy due to shortages in front line personnel. Accordingly, Chief Film formally requested that the City hire four new patrol officers and his request was approved by Stow City Council. Chief Film testified that filling the sergeant position would have resulted in one less patrol officer being hired. Chief Film acknowledged, however, that it is likely that Officer Smith would have eventually received a promotion had Sergeant Dunton's position not been left vacant.

{¶20} In November 2014, Sergeant Reed notified Chief Film that he intended to retire in May 2015. This sergeant vacancy was filled by Officer Dirker at Chief Film's recommendation in May 2015. During his deposition, Chief Film stated that Officer Dirker and Officer Smith were both good officers and worthy candidates who were qualified for the promotion. Nevertheless, Chief Film maintained that he did not consider Officer Smith because he based his recommendation solely on the eligibility list that was derived from the 2014 Sergeant's Examination. While Chief Film acknowledged that the exam score differential between Officer Dirker and Officer Smith was negligible, he stated that there was no need to look beyond Officer Dirker because he was a good candidate and he ranked first on the eligibility list.

{¶21} The summary judgment evidence showed that, on rare occasions, the City had used the rule of three to bypass candidates on the eligibility list when promoting within the Department. For example, Chief Film admitted that he received a promotion to sergeant in 2000 over a candidate who ranked higher on the eligibility list. Chief Film explained that the police chief at that time believed that he had a superior employment history. In regard to filling Sergeant Reed's position in 2015, however, Chief Film testified that he utilized the same methodology as former Chief Dirker because it would have been unfair to implement an alternative approach when the

eligibility list was already in place. The eligibility list that resulted from the 2014 Sergeant's Examination was set to expire in April 2016. Officer Smith obtained a six-month extension but the eligibility list expired in October 2016 without Officer Smith receiving a promotion.

**{¶22}** Based on the aforementioned evidence, there was at a minimum a question of material fact regarding whether similarly situated nonprotected officers received better treatment than Officer Smith. *See Dresher*, 75 Ohio St.3d at 292-293.

**{¶23}** This Court will first address the trial court's decision to refrain from analyzing whether Officer Miller was similarly situated to Officer Smith based on Officer Smith's deposition testimony that racial discrimination did not play a role in Officer Miller's promotion in 2014. A careful review of Officer Smith's testimony reveals that he conveyed a far more nuanced position. When asked whether Chief Dirker recommended Officer Miller for a promotion for the specific purpose of discriminating against Officer Smith on the basis of race, Officer Smith responded in the negative. Importantly, however, Officer Smith had previously testified that he was qualified and he wanted to be promoted when a sergeant position became available. When asked if he thought the City should have used the rule of three to promote him to sergeant, Officer Smith responded in the affirmative but stressed that he was particularly frustrated in regard to the 2015 promotion given his belief that he had a much better resume than Officer Dirker. "[A] plaintiff may show that he was the victim of a discriminatory practice by either direct evidence or through indirect evidence." *Atkinson v. Akron Bd. of Edn.*, 9th Dist. Summit No. 22805, 2006-Ohio-1032, ¶ 28, citing *Byrnes v. LCI Communications Holdings Co.*, 77 Ohio St.3d 125, 128 (1996). We read Officer Smith's deposition testimony to mean that he could not identify direct evidence of racial discrimination in regard to Officer Miller's promotion in 2014. Officer Smith's deposition

testimony did not constitute an admission that he was not similarly situated to Officer Miller for the purpose of establishing a prima facie case through indirect evidence.

{¶24} Under these circumstances, the trial court erred in concluding that Officer Smith failed to establish the fourth element of his prima facie case for discrimination on the basis of race. There is no dispute that Officer Smith was qualified for a promotion to sergeant based on his score on the 2014 Sergeant's Examination. While three sergeant positions became available during the certification period, two of those promotions were given to Caucasian officers and the third position was left unfilled. Under the rule of three, the City could have promoted Officer Smith to fill any of those vacancies as it was not required to promote strictly based on the eligibility list rankings that resulted from the 2014 Sergeant's Examination. Based on this evidence, a reasonable jury could conclude that comparable nonprotected employees received better treatment than Officer Smith.

{¶25} Moreover, to the extent the trial court relied on the nondiscriminatory reasons proffered by the City and Chief Film for denying Officer Smith a promotion, such as budgetary constraints or an established practice as to how the rule of three was implemented within the Department, we note that it is premature to entertain such considerations at the prima facie case stage. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir.2000) (concluding in the age discrimination context that "a trial court should only consider the employer's proffered reason in the later stages of the *McDonnell Douglas* analysis.")

{¶26} Officer Smith's first and fifth assignments of error are sustained.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY DETERMINING OFFICER SMITH PRESENTED INSUFFICIENT EVIDENCE TO MEET THE FOURTH ELEMENT OF HIS PRIMA FACIE CASE OF RETALIATION UNDER R.C. 4112.02.

{¶27} In his third assignment of error, Officer Smith claims that the trial court erred in concluding that he failed to make a prima facie case of retaliation pursuant to R.C. 4112.02(I).

{¶28} R.C. 4112.02(I) provides that is it an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

{¶29} In order to establish a prima facie case of retaliation pursuant to R.C. 4112.02(I), a plaintiff must prove that (1) he or she engaged in a protected activity, (2) the defendant was aware that the plaintiff had engaged in that activity, (3) the defendant took an adverse employment action against the plaintiff, and (4) there is a causal connection between the protected activity and adverse action. *Rivenbark v. Discount Drug Mart*, 9th Dist. Medina No. 17CA0089-M, 2018-Ohio-4072, ¶ 56. "If a complainant establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate that the proffered reason was not the true reason for the employment decision." (Internal quotations and citations omitted.) *Riverbank* at ¶ 56, quoting *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 14.

{¶30} "A plaintiff may demonstrate a causal connection through direct evidence or 'through knowledge coupled with a closeness in time that creates [a]n inference of causation.'" *Healey v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 25888, 2012-Ohio-2170, ¶ 19, quoting *Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261, ¶ 28. "Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal

connection—but only if the adverse employment action occurs 'very close' in time after an employee learns of a protected activity." *Healey* at ¶ 19, quoting *Meyers* at ¶ 28, quoting *Clark City School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

{¶31} "If, however, some time has elapsed between the protected activity and the subsequent adverse employment action, the employee 'must produce other evidence of retaliatory conduct, namely, evidence of additional discrimination, to establish causation.'" *Healey* at ¶ 20, quoting *Meyers* at ¶ 29.

{¶32} Officer Smith's complaint contained a count of retaliation against the City and Chief Film. The Department's uniform policy contains a grooming provision that requires male officers to be clean shaven when reporting for duty. Officer Smith suffers from pseudofolliculitis, a skin condition that predominately impacts African American men. The skin condition makes it difficult for Officer Smith to shave on a daily basis without experiencing pain and irritation on his face and neck. Officer Smith filed several complaints about the uniform policy and sought accommodations on a number of occasions. Officer Smith alleged that the City and Chief Film engaged in retaliatory conduct in a number of ways, including promoting Officer Dirker over Officer Smith in 2015 and refusing to fill the sergeant vacancy created by Sergeant Dunton's retirement during the timeframe that Officer Smith was eligible for a promotion.

{¶33} During his deposition testimony, Officer Smith stated that he filed formal complaints for several reasons, including his treatment regarding his facial hair condition and the manner in which the promotional process was handled. In 2011, then-Lieutenant Film asked Officer Smith to see a dermatologist to obtain formal medical documentation regarding his skin condition. Officer Smith explained that while then-Lieutenant Film was aware that the skin condition was common among African American men, he wanted formal documentation in place

so that the Department could maintain its grooming policy in regard to other officers. Officer Smith obtained a doctor's note indicating that he should wear a well-trimmed beard to accommodate his condition. Officer Smith explained that he had an understanding with Chief Dirker that he could take time between shaves. There were no additional issues regarding Officer Smith's facial hair until Chief Film became chief.

{¶34} In August 2014, Officer Smith reported for duty to work a community event having not shaved for multiple days.[2] Chief Film scheduled a meeting with Officer Smith less than a week later to discuss the facial hair issue. Chief Film informed Officer Smith that he had met with the City's service director to discuss what his options were on the subject. Officer Smith testified that there was discussion regarding how frequently he was able to shave. Chief Film raised the prospect of Officer Smith seeing the dermatologist to obtain an updated doctor's note. Officer Smith did not understand why that was necessary given that the issue had been addressed in 2011. Chief Film testified during his deposition that he did not believe that Officer Smith was complying with the 2011 doctor's note because his facial hair was not well groomed.

{¶35} Officer Smith filed an internal complaint after the conversation with Chief Film in August 2014. In addition to the facial hair issue, Officer Smith expressed concern about rumors that Chief Film intended to restructure the Department to eliminate a sergeant position. The service director produced a report in light of Officer Smith's complaint. Officer Smith appealed the report's findings and met with Mayor Kline in September 2014. During that meeting, Mayor Kline acknowledged that Officer Smith's position was that he was being singled out and treated unfairly. The following month, Mayor Kline issued a letter to Officer Smith conveying her findings after

---

[2] Officer Smith stated in his deposition that his facial hair would not have been more than a quarter-inch long when he reported for duty. Officer Smith decided to shave at the police station prior to traveling to the community event.

reviewing the situation. Mayor Kline determined that Officer Smith was not being treated unfairly regarding his facial hair. Mayor Kline encouraged Officer Smith to make an appointment with a dermatologist of his choosing so that the issue could be settled definitively. Mayor Kline further indicated that Officer Smith should rest assured that the promotional process would be fair.

**{¶36}** As noted above, a sergeant position became available when Sergeant Dunton retired in September 2014 but Mayor Kline and Chief Film determined that the vacancy would not be filled. When another sergeant position became available in May 2015, Chief Film and the City selected Officer Dirker over Officer Smith to fill the vacancy.

**{¶37}** In June 2015, Officer Smith filed a racial discrimination charge with the Equal Employment Opportunity Commission wherein he alleged that he received unfair treatment during the promotional process and in regard to his facial hair. In August 2015, Lieutenant Titus approached Officer Smith and questioned him regarding his facial hair. Shortly thereafter, Officer Smith was called to another meeting regarding his facial hair with Mayor Kline, Chief Film, Lieutenant Titus, and the law director. Officer Smith expressed his displeasure given that he thought the facial hair issue had been settled the previous year. Officer Smith further expressed his position that other officers were granted more leniency regarding the uniform policy. As the meeting unfolded, Officer Smith posed questions regarding how the decision to leave Sergeant Dunton's position vacant impacted the Department's budget.

**{¶38}** That same month, Officer Smith advanced an internal complaint that he was being treated unfairly in light of the EEOC charge. Chief Film subsequently sent an email to all of the Department's sergeants and lieutenants indicating that it would be unlawful for Officer Smith to receive any type of harassment or retaliation in light of his decision to file an EEOC charge. Chief

Film further indicated that Officer Smith had recently produced an updated doctor's note, that the Department recognized his medical condition, and that he was exempt from shaving every day.

{¶39} Officer Smith obtained a six-month extension of the eligibility list that resulted from the April 2014 Sergeant's Examination. It is undisputed that Chief Film supported Officer Smith's efforts to seek an extension. Sergeant Dunton's position remained vacant when the eligibility list expired in October 2016. Approximately two weeks after the eligibility list expired, Chief Film sent a letter to Mayor Kline outlining several personnel concerns within the Department. The foremost concern stated in the letter was that the Department needed to hire two additional patrol officers. Chief Film further stated that "[w]e have been one supervisor short since the fall of 2014. * * * The promotion of a Sergeant is needed to eliminate this overtime and help reduce fatigue caused by other supervisors working mandated additional hours." The City did not commence another sergeant's promotional exam until 2018. Chief Film modified the criteria for the promotional process in 2018. Officer Smith declined to participate in that process.

{¶40} A careful review of the trial court's May 31, 2022 judgment entry reveals that the trial court omitted several key components of its analysis of whether Officer Smith established a prima facie case for retaliation.

{¶41} The trial court determined that Officer Smith had satisfied the first two elements of his retaliation claim. Although the trial court did not reach a definitive conclusion as to whether Officer Smith suffered an adverse employment action regarding the promotional process, the trial court ultimately granted summary judgment on the basis that Officer Smith failed to present evidence demonstrating a causal connection between the promotional decisions and protected activity. Significantly, however, the trial court did not address whether there was a causal connection between the decision to promote Officer Dirker and protected activity on the part of

Officer Smith. With respect to the sergeant position that was left vacant after Sergeant Dunton's retirement, the trial court stated as follows:

> [I]t is undisputed that [Sergeant] Dunton's position became vacant around August of 2014. In addition, [Chief] Film learned in November 2014 that [Sergeant] Reed would retire in May of 2015. Thus, the [] decision to keep [Sergeant] Dunton's position vacant was made prior to [Officer Smith] being next in line for a promotion. Moreover, the decision was made when [Chief Film and the City] were unaware that another sergeant vacancy would occur.

**{¶42}** This Court is compelled to sustain Officer Smith's third assignment of error based on the reasoning set forth in the summary judgment order. "Although our review is de novo, this Court is precluded from considering the motions for summary judgment in the first instance. * * * That necessarily includes an examination of the evidence within the applicable legal context." *Mitchell v. Worley*, 9th Dist. Medina No. 21CA0063-M, 2022-Ohio-4222, ¶ 38, quoting *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 11. Officer Smith presented evidence regarding tensions within the Department over the fact that he sought accommodation regarding his skin condition and filed several complaints in 2014 and 2015. In its summary judgment order, the trial court did not address whether there were issues of fact as to whether the decision to promote Officer Dirker over Officer Smith was retaliatory in nature. Furthermore, to the extent the trial court's ruling regarding the unfilled sergeant vacancy was predicated on the fact that Officer Smith was not first on the eligibility list at the time the vacancy arose, that point is not dispositive of the retaliation analysis given that City and Chief Film had the authority to promote any of the certified candidates, including Officer Smith, to fill that vacancy pursuant to the rule of three. The trial court must address in the first instance whether the restructuring of the Department constituted an adverse employment action against Officer Smith and, if so, whether that adverse employment action was connected to protected activity on the part of Officer Smith. If this Court were to address these issues in the first instance, "our decision would constitute a

ruling on the motions for summary judgment in the first instance as well, effectively depriving the non-prevailing party of appellate review." *Guappone* at ¶ 13.

{¶43} Officer Smith's third assignment of error is sustained to the extent discussed above.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY APPLYING THE WRONG STANDARD WHEN EVALUATING THE FOURTH ELEMENT OF OFFICER SMITH'S PRIMA FACIE CASE OF DISCRIMINATION UNDER R.C. 4112.02.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY DETERMINING OFFICER SMITH FAILED TO ESTABLISH DIRECT EVIDENCE OF DISCRIMINATION UNDER R.C. 4112.02.

{¶44} In his second assignment of error, Officer Smith contends that the trial court misconstrued the legal standard for making a prima facie case of discrimination based on race. In light of this Court's resolution of Officer Smith's first and fifth assignments of error, we decline to address his second assignment of error as it has been rendered moot. App.R. 12(A)(1)(c).

{¶45} Furthermore, in his fourth assignment of error, Officer Smith argues that the trial court erred in concluding that he failed to present direct evidence of discrimination. Officer Smith suggests that the "totality of [his] evidence[]" about his experiences over the course of his career was sufficient to constitute direct evidence of discrimination. "[A] plaintiff [pursuing a claim pursuant to R.C. 4112.02] may show that he was the victim of a discriminatory practice by either direct evidence or through indirect evidence. *Atkinson*, 2006-Ohio-1032, at ¶ 28, quoting *Byrnes*, 77 Ohio St.3d at 128. In resolving Officer Smith's first assignment of error, this Court determined that Officer Smith carried his burden to survive summary judgment with respect to his racial discrimination claim based on an indirect evidence theory. Accordingly, this Court need not

address Officer Smith's fourth assignment of error pertaining to his direct evidence theory as it has been rendered moot. App.R. 12(A)(1)(c).

### III.

**{¶46}** Officer Smith's first, third, and fifth assignments of error are sustained. This Court declines to address Officer Smith's second and fourth assignments of error as they have been rendered moot. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

LEWIS A. ZIPKIN and KEVIN M. GROSS, Attorneys at Law, for Appellant.

JOHN W. MCKENZIE, MICHAEL P. KARST, and AMANDA S. SMITH, Attorneys at Law, for Appellees.

JAIME M. SYX, Director of Law, for Appellees.